## SMITH v. SMITH.

No. 21989.

Kansas City Court of Appeals.

Missouri.

May 3, 1954.

Bamburg & Bogutski, Sedalia, for appellant.

Wesner & Wesner, Sedalia, for respondent.

BROADDUS, Judge.

This is an action for divorce instituted by the husband. Defendant filed an answer and cross-bill. The court denied a decree to either party. Plaintiff appealed, but defendant did not.

Plaintiff alleged in his petition that defendant; (1) kept company with another man; (2) refused to quit working or change jobs, even though often requested to do so by the plaintiff because her employment was objectionable to him; (3) failed to perform the normal household duties of a wife, and (4) on numerous occasions, cursed, abused and physically struck plaintiff.

We need not set out the allegations of defendant's cross-bill inasmuch as she did not appeal.

Plaintiff and defendant were married at Peach Tree, Arkansas on January 24, 1932. In 1939 they moved to Pettis County, Missouri, where they have since resided. Six children were born of the marriage, ranging in age at the time of the trial from 8 to 20 years. Plaintiff is 46 years of age, defendant 40.

Plaintiff is a mail contractor; that is, he hauls mail from one post-office to another. Defendant also has a mail contract. His is called the Warsaw Star Route, hers the Longwood Star Route. Plaintiff also operates a small farm on which he has about 14 head of cattle.

The real dispute in this case arose over the fact that defendant went to work in a restaurant in Sedalia as a cook. Plaintiff charges that the relationship between defendant and her employer is not strictly one of employer and employee. Defendant went to work in this restaurant during the week the State Fair was being held in 1951.

She was still working there at the time of the trial. Her hours of employment were from 11:30 a. m. until 8:30 p. m.

On or about August 10, 1952, plaintiff moved out of the house he and defendant were occupying in Sedalia and on August 16, 1952, filed this suit. Then in November or December of 1952, he moved back into the house with defendant and was still occupying this house with her on the day of the trial, April 17, 1953. Thus, for six months immediately prior to the trial the parties lived under the same roof, ate at the same table, and generally continued their marital life as it had been carried on for six months or more prior to the filing of this suit. Plaintiff transported defendant in his car from the restaurant to their home whenever she asked him to and did so the very night before the trial.

The reason given by defendant for going to work in the restaurant was that "we had gotten in hard circumstances." This was undoubtedly true, because when plaintiff was on the witness stand and was asked about his debts he said: "I have so many I wouldn't want to name them." Doubtless too defendant longed for better things for herself and the children. She testified that she had only owned one dress since she had been married, and "I have never had no money from him for spending money or anything."

A son of the parties 17 years of age, also worked in the restaurant. He testified that one evening he left the restaurant and shortly thereafter returned. He looked for his mother. She was not in the kitchen. He went to the basement and the door of the men's rest room was locked. He walked back upstairs and talked to one of the girls for a few minutes. He then went back down the stairs and saw defendant and the restaurant owner coming out of the men's rest room. Some two or three days later he told his father of this occurrence.

Defendant's version of this affair was that she went downstairs to the women's rest room. She dropped her ring and thought it had rolled under the partition and into the adjoining men's rest room. So she went in there to look for it. Just then her employer came down and wanted to know what she was doing in there. She told him that she had lost the ring and was looking for it. She testified that the door to the men's rest room was not locked and nothing improper occurred.

Defendant's employer testified that he walked down to the rest room. He did not know that defendant was in there, as he thought she had gone home. When he saw defendant he said to her: "What are you doing here?" She said: "I thought I dropped my ring. So I said: 'I'll see if I can help you find it.' I lifted up the floor drain and didn't find it, so in a minute or so we went out."

The son also testified that one evening on the street near the power plant in Sedalia he saw defendant and her employer with their automobiles stopped, talking to one another. Defendant admitted that one night as she was driving home from work and when in the vicinity of the power plant she noticed her employer's automobile, but denied that there was any meeting, or that the automobiles were stopped, or that any conversation took place, as did her employer.

Both defendant and her employer testified positively that at no time did anything improper ever occur between them. In this they were corroborated by the employer's wife and other employees of the restaurant. Defendant produced seven witnesses who testified that her general reputation for morality was good; that she was a good housekeeper and a good mother.

At plaintiff's request the trial court gave a memorandum opinion. In it he found that "the plaintiff has failed to prove his allegation as to keeping company with another man. Only one man was complained of and, under the *credible evidence,* the court finds there were no improper relations; nothing under the *credible evidence* as to conduct between defendant and the other man to justify a divorce between plaintiff and defendant." (Emphasis ours) In our opinion, that finding was proper.

The trial court found and, we think correctly, that: "The evidence does not show that defendant neglected the home and its work." The evidence shows that the defendant arises at 6 a. m. She gets breakfast for the entire family. She cleans the bed rooms and gets the three younger children off to school. After doing that, she goes to the post-office and "works the mail" and then goes back and finishes cleaning the house before going on the mail route. The children would eat lunch at school. When they would return from school their older sister, 18 years of age, would be in the house to look after them and get supper for the family.

Defendant admitted that plaintiff had requested her to quit her employment. She testified that she could not get work at another restaurant where the hours and wages were satisfactory. She said that "financial reasons" prevented her from quitting; that she told her husband: "I would quit work if he would give me time to get my bills paid off." The evidence shows that she had been driving plaintiff's pick-up truck on her mail route. Shortly after filing this action he sold the truck. And, in order to deliver the mail, defendant had to buy a car. She borrowed $600 to pay for it. The evidence further discloses that defendant purchased many articles for the home and the children. She also bought a watch for her husband for his birthday, and an electric clock for his parents and an electric iron for his mother. After studying the transcript we agree with the trial court's finding that: "Perhaps the defendant with her earnings spent a part unwisely, but it was spent on the home and the family."

In our opinion, plaintiff has not shown himself to be both an innocent and injured party. The evidence discloses that there was constant quarreling and nagging between the parties, and, as the trial court found, "both were possibly at fault in this regard, if not equally so." Defendant testified that plaintiff called her vile names and struck her on numerous occasions. Plaintiff admitted that he "called her some dirty names," and he did not deny from the witness stand her testimony that he struck her many times.

■ The rule has been announced many times by our appellate courts that, in divorce suits, great deference should be paid to the finding of the trial court. This because it saw and heard the parties and their witnesses and was in a much better position to judge of their credibility than is this court. We have only the printed transcript before us. We defer to the conclusion reached by the learned trial court that, under all the evidence, neither party was entitled to a decree of divorce.

■■ Plaintiff also contends that the court erred in refusing to award him a new trial upon the basis of newly discovered evidence. It is the rule in this State that the granting of a new trial on the basis of newly discovered evidence rests very largely in the discretion of the trial court. And in the absence of a clear abuse of such discretion, the appellate court will not interfere. In this instance the affidavits filed in support of the motion disclose that the new evidence was merely cumulative and probably would not have produced a different result if a new trial had been granted. We hold that the trial court did not abuse its discretion in denying plaintiff's request.

The judgment is affirmed.

All concur.