William T. DEACON, III (Plaintiff),
Appellant,

v.

CITY OF LADUE, a Municipal Corporation
(Defendant), Respondent.

No. 29369.

St. Louis Court of Appeals.
Missouri.

Sept. 18, 1956.

Alfred H. Kerth, Kerth, Thies & Schreiber, Clayton, for appellant.

Forrest Boecker, Wehrle & Wehrle, Clayton, for respondent.

ELMO B. HUNTER, Special Judge.

This is an appeal from a decree of the Circuit Court of St. Louis County dismissing plaintiff's petition in equity which sought a decree declaring unconstitutional and void Ordinance No. 282 of the defendant, City of Ladue, insofar as it restricts the use of plaintiff's property. Plaintiff lodged his appeal with this Court, and, thereafter, defendant filed its motion to transfer same to the Supreme Court of Missouri. We have taken this motion for consideration with the case.

In his petition plaintiff states that he is the owner of a tract of land located within the corporate limits of the City of Ladue. This tract which is situated on the south side of Ladue Road has a frontage of 357.-70 feet thereon and is adjacent and west of the Rock Island and Pacific right-of-way, being a part of Lots 5 and 6 of West Clayton, a subdivision. Plaintiff alleges that this tract has never been usable, adapt-

able or suitable for residential purposes, but nevertheless defendant City, by its Ordinance No. 282, has zoned it in "District E," which limits and restricts its use to one family dwellings requiring a minimum of 10,000 square feet of ground for each dwelling, resulting in the taking and damaging of plaintiff's property without compensation and without due process of law. Plaintiff charges that this ordinance, as it applies to his tract, bears no relation to the health, safety and welfare of the City of Ladue, and is unreasonable, arbitrary, discriminatory, void and unconstitutional; that its adoption and enforcement violates certain sections of the Constitution of Missouri, V.A.M.S., namely, Article I, Sections 10, 26 and 28 thereof, and the Fourteenth Amendment of the Constitution of the United States. Plaintiff has requested defendant to re-zone his property other than for a residential use but to no avail.

Defendant City by answer denied the invalidity of the ordinance; charged that plaintiff had not exhausted his administrative remedies, and pleaded laches and estoppel.

The trial of this case was lengthy. The transcript contained over 800 pages and there were more than 70 exhibits. We have carefully reviewed the entire record. It would serve no useful purpose to detail the testimony of the numerous witnesses or to describe the many exhibits. A summary of the gist of that testimony and evidence as it applies to the various questions presented by this appeal is set out below.

Defendant City is a municipal corporation duly organized and existing under the laws of this state as a city of the fourth class, located in St. Louis County. It was formed in 1936 by the consolidation of three villages, Deer Creek, Ladue and Mc-Knight. In 1938, after considerable professional study of its existing and future needs, it adopted a Comprehensive Zoning Ordinance, No. 282, which divided all of its land into seven districts. Five of these districts were restricted to single family residential use, with the following minimum land requirements per family: District A, 3 acres; District B, 1.8 acres; District C, 30,000 square feet or approximately ¾ acre; District D, 15,000 square feet; and District E, 10,000 square feet.

In 1938 the city contained 4,532 acres, and, as a result of annexation, now contains about 5,000 acres. Of all of this acreage, only 15.22 acres is zoned for commercial use (District F). The city, with a present population of about 6,000, is located in the St. Louis metropolitan area containing some 1,600,000 inhabitants. The trend of the population has been into suburban area. Defendant City lies directly in the path of the better residential development and directly west of the central area of St. Louis City. The City of Ladue is essentially one of fine homes and excellent schools and churches.

Plaintiff's property involved on this appeal is a portion of a larger tract which prior to 1945 was owned by Sarah Greensfelder and known as Lots 5 and 6 of West Clayton. These two lots contained a total of 6.2 acres. Early in 1945, she sold this tract of land to Hugh and Mary Kehling Stevenson for $6,000. In March, 1945, the Stevensons sold it to Ralph F. Bixby, plaintiff's father-in-law, for $9,500. Bixby subdivided a portion of the tract into five lots, designated as Ladue Pointer subdivision. Bixby sold Lots 1, 2, 3 and 4 thereof to Gayle Henderson for $10,000. Bixby built his own home on Lot 5, which lot had an estimated value of $3,500 to $4,000. Thereafter, for a consideration of $7,000, he conveyed the remainder of the tract consisting of 3.70 acres to William Deacon, Sr., who immediately reconveyed same to his son, plaintiff herein, for a stated consideration of $1.

At the time William Bixby owned the land, he knew it was zoned for residential usage only, and that it was suitable for only the cheaper types of houses. William Deacon, Sr., when he acquired the mentioned portion of this tract, also knew of Zoning

Ordinance No. 282 as it applied thereto. Prior to entering into any contract with Bixby for its purchase, he had consulted the alderman in the ward where the property was located respecting the zoning of the land for residential purposes. He explained that he and his son were interested in acquiring the property for the purpose of erecting on a portion of it a Williamsburg style of office. He testified he was encouraged to believe that the use which he proposed for the property would be satisfactory and in the interest of the City of Ladue. He then met with the Planning Commission of the City of Ladue, was further encouraged, and thereafter on April 3, 1950, entered into a purchase contract calling for cash payment on or before July 3, 1950. On May 15, 1950, a letter in the form of an application was directed by him to the city council of defendant City requesting that the property be changed from "E" residential to "F" commercial under the zoning ordinance. This application also contained his offer by appropriate deed restrictions to use the Williamsburg structure only for offices; that no part of the property would be used for stores, filling stations or other retail outlets; that off-street parking would be provided, and that the rest of the property (for this purpose divided into three lots) would be restricted to not more than three single family residences, and that all these restrictions would continue for 25 years, renewable automatically for additional ten-year periods thereafter, unless the property owner and defendant's city council agreed to terminate or change the same. This application was referred to defendant City's Planning Commission, which on June 1, 1950, filed its report with the city council, stating that in its opinion the proposed restrictions would improve and make the best use of the area; raise the residential classification of the greater portion of the property and only commercialize the Ladue Road frontage. The Commission unanimously recommended that the area be changed to an "F" commercial district, but only after the proposed restrictions were placed on the property.

A public hearing on the request was held by the Ladue City Council on June 19, 1950. Numerous citizens appeared. Some spoke in favor of the request, and others spoke against it. A written protest signed by the trustees of Pointer Lane subdivision was filed with the city clerk. Of the six members of the city council present, three voted for and three voted against the request. The Mayor refused to vote to break the tie "for the reason it was his understanding that an application for re-zoning must be approved by three-fourths of the members of the council". He announced that the request for re-zoning had been denied. After this action by the city council, William Deacon, Sr., on July 11, 1950, closed the deal to purchase the land and then conveyed it to plaintiff.

Evidence adduced on plaintiff's behalf disclosed that his tract was bounded on the north by Ladue Road, on the west by Black Creek, and on the east by Switch Street, which abuts the Rock Island Railroad right-of-way and a coal yard. The closest residences are located on Pointer Lane. All of the residences on Pointer Lane back up to this tract, except the residence of Ralph Bixby which fronts on Ladue Road and is bounded on the west by Pointer Lane. The tract is located in the flood plain of Black Creek. Across the street is a filling station, which was there prior to the adoption of the zoning ordinance. The Grove Laboratories is located northeast of this tract and employs from 400 to 600 people. The area east of the Rock Island right-of-way on both the north and south sides of Ladue, to the west line of the city limits of Clayton, Missouri, a distance of approximately 1,000 feet, is used for industrial purposes. The City of St. Louis owns and maintains a water line easement diagonally across the northeast part of the tract. There is a ten-foot sanitary sewer easement alongside, and a storm water easement twenty-five feet wide bisecting the tract. With the exception of the front 50 feet of plaintiff's property, which had been recently filled, the property is lower than

property to the west, and at times is subject to flooding by Black Creek.

An ordinance of defendant City provided that the lowest floor line in any house could not be less than eighteen inches above the high-water mark, and that there could be no basement unless the bottom of the basement windows were eighteen inches above the high-water mark.

In support of plaintiff's contention that the tract could not be used for residential purposes, testimony was adduced to show that throughout the years the property had remained undeveloped while all other nearby locations had developed. The west 200 feet of the property is subject to flash flooding, and developments to the north will increase the water in the future. To prevent flooding it would be necessary to make a fill of an average of at least five feet at a minimum cost of about $8,000 per acre or about $30,000 for that portion of the tract subject to flooding. There was testimony that the cost of filling and preparing the land for residential use would be greater than the market value of the land as developed for residential use, and that the net loss would be a minimum of $800 or more per residential lot. Some witnesses stated that it was not economically feasible to use the property for residential purposes. Others stated that the expense of the development of the property was so great that only a commercial use of the land would give it enough market value to permit its development at a profit to the owner. Other testimony was to the effect that because of the easements on the property, its location so near commercial property, its grade differential, fill problems, its creek location and resultant flooding, it was impracticable, if not impossible, to develop the property as residential. While houses without basements and set upon piers could be built on the property if it were filled, such houses would be small, undesirably located, and without sufficient sales value to permit any one profitably to undertake the project. Further, no national lender would make a loan

on a residence on the property. If these houses were constructed, it would mean about fourteen unattractive, undesirable homes with an average or more than average number of children to burden the Ladue school system. Such homes would not carry their share of the corporate cost. They would be more objectionable and detrimental to surrounding property than one office building and three houses as proposed by plaintiff. There was testimony that the proposed change of zoning would stabilize the value of surrounding property and would create a buffer for the protection of all surrounding residential property. It would not create a traffic problem. Several witnesses stated that it is good practice in zoning to couple with it restrictive covenants as this assures a reasonable use of the property while still protecting surrounding property.

Some of plaintiff's witnesses testified that while they would favor plaintiff's proposed commercial building on a portion of the land, they would not approve of re-zoning all of plaintiff's land for commercial usage as that would be detrimental to the interest of the community. They also stated that to re-zone plaintiff's land for commercial use without restrictions would be adverse to the welfare of the entire city, would permit intense commercial development of the tract and would create a serious traffic hazard. Some of these witnesses concluded that residential development of plaintiff's land would be feasible, if there were no danger of flooding or if such danger were removed.

Evidence supporting defendant's views indicated that the 6.2-acre tract when owned by Sarah Greensfelder, and later by Ralph Bixby, was quite suitable for profitable subdividing and residential use. Bixby had skimmed off the cream of the land by the selling of that portion best suited for residential use. The remaining portion, now owned by plaintiff, while not as suitable as that Bixby sold off, can profitably be subdivided for residential purposes. That portion of plaintiff's tract

adjacent to Ladue Road is filled and is above the flood plain. It can be put to residential use in its present condition. The remainder of the tract, if it were filled, could also be used for residential purposes. Other property in Ladue in the same flood plain as plaintiff's land had been developed for residential use. The cost of such filling would be low enough to permit a sale of the land for residential use at a profit to the seller. Several of defendant's witnesses testified in some detail as to appropriate subdivision plans for the Deacon tract that called for filling and preparing the land for residential use at a stated cost, which, based on the estimated market value of the filled and prepared tract, would give a fair profit to the owner. Some of these plans included building small four or five-room houses on piers to sell in one instance for a minimum of $10,000 to $12,000, and in another for $12,000 to $15,000. One plan called for dividing plaintiff's tract into eight lots, each improved with a five-room ranch type home, selling at $15,000 to $18,000, built in accordance with the Ladue ordinance requirements and constructed to provide protection against the water. This plan was described as feasible and profitable. Since he acquired the property, plaintiff has never tried to subdivide the land for residential use. Land available for such use is becoming scarce, causing plaintiff's property to increase in value.

With specific regard to the flooding problem, defendant's witnesses' testimony was to the effect that the eastern part of Tree Brook is on a level with the lower part of the Deacon tract, and it has been successfully improved with homes. Black Creek runs through Ladue Woods subdivision, located across the road from plaintiff's property, and it has houses built on both sides of it, some between the creek and the railroad. Further, if the Deacon tract were to be used for commercial purposes, there would still be the same flood problem. It would still be necessary to fill the land and to construct any building on piers.

While the land probably would sell for a higher price if it were zoned for commercial purposes, such use would have an immediate detrimental effect on the value and desirability of nearby residential properties. Twenty home owners in Ladue testified that they had bought their homes, ranging in value from $15,000 to $35,000, in reliance upon the zoning ordinance, and to adopt plaintiff's proposal to re-zone his tract would, in their opinion, adversely affect the value of their particular property and make it less desirable for home use. Other evidence was to the effect that any commercial development in a residential area is detrimental because it attracts a different kind of traffic and adversely affects the value and desirability of the land as residential property. There was testimony that plaintiff's offer to restrict the tract by deed was neither satisfactory nor completely reliable. It left 100 feet of land open for unrestricted commercial development. Also it would change the entire character of a thirty-acre wedge, and might result in opening the door in the future to unrestricted commercial use of the entire tract. Further, the proposal included a smelly chemical laboratory.

With regard to the other factors which plaintiff claims prevents its use as suitable residential property, plaintiff knew of them when he acquired the property. These same unfavorable factors exist relative to Ladue Woods subdivision, located across the road, and it is fully developed with homes built and occupied. It adjoins the railroad also. Actually this railroad near the Deacon tract is only an industrial track which terminates not far from there. This railroad is a better buffer between residential and non-residential than would be a property line. There are no present exceptions to the residential zoning to the west of the railroad on plaintiff's side (south side) of the railroad. Numerous other subdivisions in St. Louis County are built adjacent to or near railroad tracks. North, west and south of the Deacon tract, the land is zoned for residential use. The present

zoning regulation was taken into account in laying out the storm sewer which borders plaintiff's tract.

The comprehensive zoning ordinance and its enforcement is responsible for and has had a beneficial effect on the development of the city and has raised property values throughout the city including plaintiff's.

We proceed to consider defendant's motion to transfer this appeal to the Supreme Court. Defendant suggests five reasons why exclusive jurisdiction of the appeal is vested in that court; namely, (1) that it appears from the face of the record a constitutional question is involved; (2) the case involves a construction of the Constitution of Missouri; (3) also involves a construction of the Constitution of the United States; (4) involves the title to real estate, and (5) a political subdivision of the State of Missouri is a party. Const. Mo., art. 5, Sec. 3, V.A.M.S. The first three suggested reasons for transfer are considered together. Admittedly, the Supreme Court by the express provision of Article 5, Section 3 of the Constitution of Missouri has exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this State. Yet to preserve a state or federal constitutional question for appellate review the question must be raised at the first available opportunity; the section or sections of the constitution claimed to have been violated must be specified; the point must be presented in the motion for new trial, if any; and it must be adequately covered in the briefs. Cirese v. Spitcaufsky, Mo., 259 S.W.2d 836; Ingle v. City of Fulton, Mo.Sup., 260 S.W.2d 666; City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372; State ex rel. Kirks v. Allen, Mo.Sup., 250 S.W.2d 348; State ex rel. Barnett v. Sappington, Mo.Sup., 260 S.W.2d 669. We have carefully examined plaintiff's motion for new trial, and note that he has completely failed to mention any constitutional question in it. If he desired to preserve and urge any such question on appeal, it was his duty to call to the attention of the trial court his contention that the trial court had ruled erroneously on that question, thereby giving the trial judge an opportunity to correct such error, if it be error. By failing to assign such contention as error in his motion for new trial, he is deemed to have waived it. Phillips Pipe Line Co. v. Brandstetter, 363 Mo. 904, 254 S.W.2d 636; Shanks v. St. Joseph Finance & Loan Co., Mo.Sup., 163 S.W.2d 1017; Cirese v. Spitcaufsky, supra; City of St. Louis v. Butler Co., supra; McGill v. City of St. Joseph, Mo.Sup., 31 S.W.2d 1038. All constitutional questions having been waived by plaintiff's failure to mention and preserve them in his motion for new trial, such questions cannot now be the basis for defendant successfully claiming that exclusive appellate jurisdiction of this appeal belongs to the Supreme Court. City of St. Louis v. Butler, supra; Motchar v. Hollingsworth, Mo.Sup., 162 S.W.2d 805; Phillips Pipe Line Co. v. Brandstetter, supra; Red School District No. 1 of St. Charles County, Mo. v. West Alton School District No. 2 of St. Charles County, Mo.Sup., 159 S.W. 2d 676; Shanks v. St. Joseph Finance & Loan Co., supra; Cirese v. Spitcaufsky, supra. Nor, having been abandoned, will they be considered by this Court on the merits of the appeal.

Defendant next suggests that the Supreme Court has exclusive jurisdiction of this appeal because the case is one "involving * * * the title to real estate." Const.Mo. art. 5, Sec. 3, V.A.M.S. For an action to involve the title to real estate in the constitutional, jurisdictional sense, the judgment sought or rendered must directly affect or operate upon the title. Title must be in issue directly, not collaterally or incidentally. The judgment must adjudicate a title controversy and directly determine title in some measure or degree adversely to one litigant and in favor of another. As expressed in some cases such judgment must take title from one litigant and give it to another. Mack v. Mack, Mo.Sup., 281

S.W.2d 872; Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771; Townsend v. Lawrence, Mo.Sup., 262 S.W.2d 55; Ballenger v. Windes, 338 Mo. 1039, 93 S.W.2d 882; Albi v. Reed, Mo.Sup., 281 S.W.2d 882; Phillips Pipe Line Co. v. Brandstetter, supra; Boesel v. Perry, Mo.Sup., 262 S.W.2d 636; Judge v. Durham, Mo.Sup., 274 S.W.2d 247. In this case neither party has asked for a determination of title and no determination of title is directly involved within the meaning of the constitutional provision.

◼ Finally, defendant endeavors to base jurisdiction of this appeal on that part of Article 5, Section 3, which gives the Supreme Court exclusive appellate jurisdiction "in all civil cases where the state or any county or other political subdivision of the state * * * is a party * * *." However, our Supreme Court has long and frequently held that a city within a county is not a political subdivision of this state within the meaning of that part of the Constitution so as to confer appellate jurisdiction upon it. Stratton v. City of Warrensburg, Mo., 159 S.W.2d 766; State v. Sappington, supra; Long v. City of Independence, 360 Mo. 620, 229 S.W.2d 686; Kansas City v. National Engineering & Manufacturing Co., Mo.Sup., 265 S.W.2d 384; City of St. Louis v. Friedman, 358 Mo. 681, 216 S.W.2d 475; Smith v. City of Sedalia, 228 Mo. 505, 128 S.W. 735; Village of Grandview of Jackson County v. McElroy, 318 Mo. 135, 298 S.W. 760; Parker v. Zeisler, 139 Mo. 298, 40 S.W. 881; Kansas City v. Neal, 122 Mo. 232, 26 S.W. 695; 21 C.J.S., Courts, § 407, pp. 666 and 667. In view of the cited authorities, we hold that this Court has jurisdiction of the appeal. Defendant's motion to transfer is overruled.

◼ With regard to the merits of the matters involved in this appeal, it is our duty in equity cases to review the case de novo as to all matters properly before us and to reach our own conclusions with respect to the law and the facts. Meyer v. Meyer, Mo.Sup., 285 S.W.2d 694; Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236; Parks v. Thompson, Mo.Sup., 285 S.W.2d 687. In so doing, we consider, weigh and evaluate all of the competent evidence including evidence that has been rejected by the trial court if admissible and preserved in the record, and we disregard evidence that has been improperly admitted. Meyer v. Schaub, 364 Mo. 711, 266 S.W.2d 620; Ensign v. Home for the Jewish Aged, Mo.App., 274 S.W.2d 502; Bowman v. Kansas City, Mo.Sup., 233 S.W.2d 26; Snow v. Funck, Mo.Sup., 41 S.W.2d 2. We accord due deference to the trial judge's findings, particularly where the credibility of witnesses who appeared before him is challenged. Our final duty is to affirm or reverse according to the requirements of justice and law. Dallas v. Dallas, Mo.App., 233 S.W.2d 738; Tweed v. Timmons, Mo.Sup., 253 S.W.2d 176.

In his brief plaintiff advises he is not contending that defendant's zoning ordinance is invalid in its general respects. His position is that as it applies to his property it is invalid and unenforceable because it is beyond the authority of defendant City as conferred by statute. Secs. 89.020 and 89.040, V.A.M.S. The referred to statute grants the legislative bodies of cities of a population of less than 10,000 inhabitants authority to enact zoning regulations "For the purpose of promoting health, safety, morals, or the general welfare of the community". It further provides in Sec. 89.040: "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view

to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality."

Defendant City's zoning Ordinance No. 282, both in its general aspects and as it applied to a particular tract of land, has been carefully reviewed by the Supreme Court and held to be valid. ' Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, appeal dismissed 344 U.S. 802, 73 S.Ct. 41, 97 L.Ed. 626.

■ It is, of course, possible for a zoning ordinance to be valid as it applies to one tract of land and to be invalid as it applies to another, depending upon the particular facts of each case under consideration. Fairmount Investment Company v. Woermann, 357 Mo. 625, 210 S.W. 2d 26; Women's Kansas City St. Andrew Society v. Kansas City, Mo., 8 Cir., 58 F.2d 593; City of St. Louis v. Friedman, supra; Taylor v. Schlemmer, 353 Mo. 687, 183 S.W.2d 913.

■ The zoning ordinance having been enacted by the legislative body of the city is presumed to be valid. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762; Flora Realty & Investment Co. v. City of Ladue, supra; Ryan v. City of Warrensburg, 342 Mo. 761, 117 S.W.2d 303; Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. Having challenged the validity of the ordinance as it applies to his property on the ground it is unreasonable, discriminatory, not within the purposes of the enabling statute and thus beyond the authority conferred by that statute, plaintiff has the burden of proving such invalidity.

Plaintiff contends that because defendant's mayor refused to vote to break the tie at the time the city council was considering his proposal to re-zone his tract, the city council must be charged with having acted arbitrarily and unlawfully. It is not necessary to this decision to determine whether or not defendant's mayor was correct or mistaken in his belief that a three-fourths vote was needed to pass the proposed re-zoning measure. The fact is, the proposed change of the provisions of Ordinance No. 282, was not made by the city council, which was acting in its legislative capacity. This Court cannot substitute itself for the city council and undertake the exercise of legislative functions. It can only look to the result of those functions to determine if such result is lawful in view of a particular challenge made on lawful grounds. It therefore remains incumbent upon plaintiff to show that this ordinance, No. 282, as it exists without his requested change, and as it thereby applies to his tract of land is beyond the statutory authority of defendant's city council, as he contends.

■ Defendant. City's legislative body has the duty and right to determine for itself what plan, classification and regulations are necessary to promote the health, safety, general welfare, morality or other named purpose of the enabling statute; to determine the use classification to be given to any particular area, and to provide for suitable and lawful changes in such classifications and regulations thereafter. Unless it should appear that the action of the City's legislative body in the respects in issue here is clearly arbitrary, discriminatory, unreasonable or otherwise beyond the authority conferred by the enabling statute, we must uphold it. Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo. Sup., 265 S.W.2d 374; State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720; City of St. Louis v. Friedman, supra; City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, 358 Mo. 70, 213 S.W.2d 479. Even if the city council's action in originally zoning plaintiff's property as it did and in failing to re-zone it upon request is reasonably doubtful or even fairly debatable, we are not permitted to substitute our judgment upon that issue for the judgment of that body charged by law with the responsibility of determining that question, and in such a situation we must uphold its

action. Laudau v. Levin, 358 Mo. 77, 213 S.W.2d 483; Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, supra; City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, supra; 37 Am.Jur., Municipal Corporations, Sec. 185. The fact that economic loss will be sustained by plaintiff if the ordinance is enforced is not controlling. It is at best only one factor to be considered in determining the reasonableness and validity of the ordinance. Flora Realty & Investment Co. v. City of Ladue, supra; State ex rel. Oliver Cadillac Co. v. Christopher, supra. The fact that neighboring or adjoining property is less restricted than plaintiff's property does not establish arbitrary zoning or unfair discrimination. Flora Realty & Investment Co. v. City of Ladue, supra; City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, supra; Geneva Investment Co. v. City of St. Louis, 8 Cir., 87 F.2d 83.

The evidence before us indicates that at the time the zoning ordinance was enacted and for many years thereafter, plaintiff's land was a portion of a somewhat larger tract that could have been subdivided profitably and for reasonable residential use. There is substantial testimony that in its present size and location it still can be subdivided for residential use by filling a portion of it. The evidence is highly conflicting as to whether or not the cost of preparing the land by filling is so great as to make it economically not feasible or impossible to put it to a residential use, rather than to a commercial use which would be better able to bear that expense. As to the other factors detracting from the usability of this land for residences, again the evidence is highly conflicting as to whether or not they in fact make it either impractical or impossible to put it to that use. The trial judge, as do we, had before him substantial testimony to the effect that (1) other tracts of land in the same vicinity have substantially these same undesirable features of location and flooding, and they have been successfully subdivided for resi-

dential use; (2) any re-zoning of plaintiff's land would result in the immediate depreciation of the value of numerous nearby homes and lessen their desirability for residential use; (3) plaintiff's proposal was not satisfactory assurance against such depreciation and lessening of desirability for home use; (4) any commercial development in a residential area is detrimental because it attracts a different kind of traffic; (5) to re-zone plaintiff's land without restrictions would permit intense commercial development, would create a serious traffic hazard, and would be adverse to the welfare of the entire city; (6) the railroad, which is alongside of plaintiff's tract, is a better buffer between residential and non-residential than would be a property line; (7) to re-zone as requested would interfere with and detract from the general zoning plan adopted for the benefit of the entire city.

Yet plaintiff's contention that the facts of record do not warrant the earlier placement and present retention of his property in a residential zone in some respects may be considered to present a close question. In this it is not unlike other cases that have admittedly presented a debatable question on the facts as to the proper use classification of a particular piece of property, and in those cases the validity of the zoning ordinance as it applied to the particular tract was upheld. Ryan v. City of Warrensburg, supra; Landau v. Levin, supra; State ex rel. Oliver Cadillac Co. v. Christopher, supra; City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, supra.

Upon the evidence before us we cannot say that the ordinance as it applies to plaintiff's property does not have a rational and reasonable tendency to promote the purposes of the state's enabling statute authorizing the city to enact and maintain its zoning ordinance. The most that can be said for plaintiff's contention in that respect is that it is fairly debatable. It being at best merely debatable, it is the settled

rule, as announced earlier in this opinion, that we cannot substitute our judgment on that issue for the judgment of the body charged by law with the responsibility of determining that question. The wisdom of legislation is a matter exclusively for legislative determination. Courts may not interfere with the enactment or enforcement of zoning ordinances for the reason they may think them unwise. Plaintiff's relief, if any, must come from the legislative body of the city.

Plaintiff also contends that the trial court erred in refusing to grant a new trial in the face of a verified motion for new trial alleging that it has become known to plaintiff since the final submission of this cause to the court that (1) witnesses who had testified for defendant "were mistaken as to the facts upon which their testimony was based, and that certain of said witnesses who have since become aware of the facts would give testimony in support of plaintiff on the merits of this case", and (2) "that the testimony of witnesses for the defendant permitted to qualify as experts and under opinions which conjectured as to the development as affects plaintiff's property in the future were erroneous, and that the facts pertaining to the development which have taken place since the submission of this case establish the error and mistake of judgment on the part of such witnesses".

We note without comment that the trial of this cause was completed on April 15, 1952, but that the findings and judgment of the trial court were not made and entered until February 16, 1955. Plaintiff's motion for new trial was filed on February 25, 1955, argued May 12, 1955, and overruled by the trial court on May 20, 1955.

■■■■ It is the rule in this state that the granting of a new trial on the basis of newly discovered evidence is not favored and rests largely in the sound discretion of the trial court. Absent a clear abuse of that discretion the reviewing court will not interfere. Smith v. Smith, Mo.App.,

267 S.W.2d 704; Gromowsky v. Ingersol, Mo.App., 241 S.W.2d 60; Lynch v. Baldwin, Mo.Sup., 117 S.W.2d 273; Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748. The allegations contained in such a motion for new trial do not prove themselves, notwithstanding that the motion is verified by a party. McCormack v. McNamee, Mo.Sup., 274 S.W.2d 272; Block v. Rackers, Mo.Sup., 256 S.W.2d 760. Further, the aggrieved party must show that (1) the evidence has come to his knowledge since the trial; (2) that it was not owing to want of diligence that it did not come to his knowledge sooner; (3) that it is so material that it would probably produce a different result if a new trial were granted; (4) that it is not cumulative only; (5) that the object of the evidence is not merely to impeach the character or credit of a witness, and (6) that the affidavit of the witness himself should be produced, or its absence accounted for. Browhaw v. Dowd, Mo.App., 187 S.W.2d 29; Lynch v. Baldwin, supra.

■■■ Plaintiff's motion for new trial suggests no new witnesses nor new evidence as such, but rather suggests only that some (without naming them) of defendant's witnesses who testified at the trial were mistaken in their testimony, and now would testify in favor of plaintiff, and that other of defendant's trial witnesses (also not named) have had their expressed opinions proven wrong by the passage of time. We believe the trial court was correct in overruling this motion for new trial, and certainly there has been no showing of any abuse of his discretion.

We have examined plaintiff's cited authorities and have concluded that as applied to the facts and issues of this case they are not inconsistent with our expressed views. Also, because of those expressed views it becomes unnecessary to consider defendant's claim that plaintiff should be barred from any right to ask relief by principles of estoppel, laches and other suggested defenses.

Accordingly, the judgment and decree of the Circuit Court should be and is, in all things, affirmed.

ANDERSON, P. J., and MATTHES, J., concur.