*270 OPINION OF THE COURT
Gabrielli, J.
The limited, rather narrow issue presented on this appeal is whether the Town of North Hempstead may so stringently apply the term "family” as used in its zoning ordinances as to exclude a small "group home” of the type described herein used for the foster care of children. We hold that it may not.
Petitioner is a not-for-profit corporation which has purchased a house in Port Washington, an unincorporated area of the town. The applicable zoning ordinance allows only one-family residences to exist in the section of Port Washington in which the house is located. The ordinance defines a family as "[o]ne (1) or more persons related by blood, marriage or legal adoption residing or cooking or warming food as a single housekeeping unit; with whom there may not be more than two (2) boarders, roomers or lodgers who must live together in a common household”. At the time this proceeding was commenced, petitioner had determined to use the house it purchased as a "group home” for the care of children as is authorized by section 374-c of the Social Services Law. Believing that certain structural modifications were necessary for its purposes, petitioner applied to the town building commissioner for a building permit. The commissioner denied the permit, declaring that a "group home” was not a permitted use in that area. The commissioner’s refusal to issue a permit was sustained by respondent board of zoning and appeals, and petitioner then commenced this article 78 proceeding seeking to annul the decision of the board.
Petitioner has proffered two alternative reasons why it is entitled to a building permit. First, petitioner argues that a "group home” is a family within the meaning of that term as it is used in the zoning ordinances of the town; alternatively, petitioner contends that the State has so pre-empted the area of child care that it would be a violation of public policy to allow a municipality to exclude a "group home” approved by the State. Supreme Court ruled in petitioner’s favor, concluding that in light of this court’s decision in City of White Plains v Ferraioli (34 NY2d 300), the "group home” which petitioner sought to create must be considered a family for zoning purposes. The Appellate Division disagreed with that conclusion, but nonetheless affirmed the judgment of Supreme Court on the ground that a municipality may not utilize its *271 zoning powers so as to exclude a "group home” approved by the State. The order of the Appellate Division should be affirmed, but on the narrow ground that the "group home” as described by petitioner before the commissioner and the board cannot be distinguished from a "natural” family. We need not, and accordingly we do not reach the broader question whether the State has pre-empted this area to the extent that a municipality may not forbid the establishment of a "group home” authorized under State law.
Before discussing the merits of this appeal in detail, it is necessary to first deal with a preliminary procedural question. As noted above, this challenge was originally commenced as an article 78 proceeding seeking to compel the issuance of a building permit. At some undisclosed time after the petition was filed, however, petitioner decided that the proposed structural modifications were in fact unnecessary. Petitioner has apparently commenced operation of its "group home” and no longer requires a building permit. It has been suggested that this proceeding is now moot. Although this is true to the extent that the relief originally sought by petitioner is no longer needed, there nonetheless continues to exist a timely and justiciable controversy between these parties, since petitioner is operating what respondent considers to be an illegal nonconforming use. To dismiss this matter as moot would be unrealistic in the extreme, since the question then would simply have to be relitigated in another form. Rather than countenancing such an unnecessary waste of both parties’ time and money, as well as increasing the ever heavy calendars of the courts, we have determined to convert this article 78 proceeding into an action seeking declaratory relief (see CPLR 103, subd [c]).
While the power to zone is a broad one, it is not without limit. It may be exercised only in pursuit of some valid public purpose and cannot serve to justify arbitrary exclusionary efforts. It is now settled law that a community may appropriately limit the use of certain neighborhoods to single-family residences. As the Supreme Court of the United States has remarked in Village of Belle Terre v Boraas (416 US 1, 9): "A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one * * *. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones *272 where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.”
Nonetheless, a community may not, under the guise of protecting such values, apply completely arbitrary restrictions. The "group home” in the present case, as described in the record before us, is the functional and factual equivalent of a natural family, and to exclude it from a residential area would be to serve no valid purpose. Thus, we refuse to interpret the town ordinance as forbidding the establishment of "group homes” of the type described in this opinion in an area zoned exclusively for one-family residences.
The "group home” which this record presents will consist essentially of two permanent surrogate parents and seven children. The surrogate parents are to live in the house with the children, and to create a stable home environment for them. There will also be available temporary replacements for the surrogate parents, who will, like most parents, occasionally need some time away from the children. The children themselves are to be drawn from the Port Washington area. Thus, they will already be residents of the community. They will continue to attend the local schools, and will place no extra or additional burden upon the community.
The "group home” is intended to serve as a home for a few children who, because of an unhappy home life, simply cannot thrive and grow if they remain with their natural families. This home is not to be a detention center for persons in need of supervision, nor is it to serve as a place of treatment for the mentally disturbed youngster, although it will of course provide psychiatric counseling. Rather, this "group home” is intended to function as a replacement family for the victim of an unhappy home who, if left to struggle unsuccessfully with his or her natural family, might well become tomorrow’s delinquent. The "group home” is to provide such children with a stable, family-like existence, to give them the support and nurture they need if they are to grow into mature individuals capable of dealing with the complexities of life.
Much ado has been made about petitioner’s frank statement that it does not wish to keep these children in the "group home” until they reach maturity. Instead, the "group home” is intended to care for the children and prepare them for an eventual hoped for return to their natural families, if either the children become capable of handling the problems that exist in their natural families or if the family situations from *273 which they come should themselves improve. Thus, it is suggested that this "group home” is a boarding house for transients, more akin to a college fraternity house than to the type of foster care "group home” which we found to be a family in the White Plains case. This argument is specious, for it would wrench out of context and place undue emphasis upon certain language used in that case, while at the same time simply ignoring the basic principles and rationale expressed therein.
Any foster care program, whether it be petitioner’s "group home” for seven foster children or the somewhat larger "group home” challenged in White Plains, is in a very real way "temporary”, since foster care by its very nature is simply a method of caring for children until they can either be returned to their natural parents or until an adoptive home can be found for them. Thus, the argument that petitioner’s "group home” is not a family simply because petitioner hopes to eventually return the children to their natural families is unconvincing. If this rationale were accepted, it could as readily be applied to allow the exclusion of a family with more than two foster children under this town ordinance. Such a result would, of course, be absurd. The flaw in respondent’s position is that it would have us simply take the word "temporary”, give it some talismanic significance, and apply it to exclude any "group home” regardless of the underlying realities.
Petitioner’s very purpose is to create a stable, family type environment for children whose natural families unfortunately cannot provide such a home. As such, petitioner’s "group home” would in no way detract from the family and youth values which one-family zoning is intended to protect. In fact, petitioner’s "group home” might actually support and further those values even more effectively than certain natural families. If petitioner’s "group home” is to be a success, it would most appropriately be placed in just such a quiet, residential neighborhood, for that is the very type of atmosphere which it seeks to emulate.
The surrogate family which petitioner hopes to create is in fact a permanent family structure, and not a temporary residence for transients. Although some of the resident children will be replaced by others as time passes, the family unit itself will continue. Moreover, regardless of the pious intentions of petitioner to return each child to its natural family as *274 soon as possible, the grim realities of life are such that any such return may often be delayed for a considerable time, and may in some cases never eventuate.
Finally, we would emphasize that our decision today is limited to homes such as that described in this opinion, which serve as the functional equivalent of a family, for the exclusion of such groups would in no way further any valid public purpose. Whether a particular "group home” comes within this description is essentially a factual question. Different factors would exist were petitioner to convert its group house, for example, from the type of operation described above into a home for delinquents or the mentally disturbed, and we express no opinion as to the proper result in such a case. Thus, we conclude only that the "group home” described in this opinion is a permitted use as a one-family dwelling under the town zoning ordinances. Should the nature of the house change with the passage of time, however, should it become less of a surrogate family and more of an institution, it might then become an unpermitted use. On this record, however, we must conclude that petitioner’s "group home” is indeed a family.
Accordingly, the order appealed from should be modified, with costs to petitioner, to the extent of converting this article 78 proceeding into an action seeking declaratory relief, and judgment should be entered in favor of petitioner declaring that the "group home” described in this opinion is a family for purposes of respondent’s zoning ordinance.