David LONDON, Appellant,

v.

HANDICAPPED FACILITIES BOARD OF ST. CHARLES COUNTY, et al.,

and

County Court of St. Charles County, Missouri, Respondents.

No. 44169.

Missouri Court of Appeals,
Eastern District,
Division One.

June 8, 1982.

Motion for Rehearing and/or Transfer Denied July 16, 1982.

Application to Transfer Denied Sept. 13, 1982.

---

Rex M. Burlison, O'Fallon, for appellant.

Norman C. Steimel, St. Charles, for respondents.

CRANDALL, Judge.

This appeal arises from the denial of a permanent injunction by the trial court wherein appellant sought to enjoin the violation of restrictive covenants in a deed. We reverse and remand with directions.

Since the facts of this case are, in large part, not disputed, we will briefly review them. Appellant is the owner of a residence located at # 33 Shadybrook Court in the Westbrook Manor Subdivision of St. Charles County. The lots in that subdivision are impressed with certain deed restric-

tions.[1] Immediately adjacent to that property is # 35 Shadybrook, which is owned by the County of St. Charles. Respondents are the Handicapped Facilities Board of St. Charles County[2] and the St. Charles County Court. The controversy arises out of the use of # 35 Shadybrook by the County of St. Charles.

The residence at # 35 Shadybrook was purchased by the County of St. Charles to carry out the statutorily approved purpose of establishing a county residence facility to serve the county's handicapped citizens. After the purchase of the property, improvements were made which did not alter the residential character of the home. The home was to be occupied by a married couple, described as salaried teaching counselors, who would supervise life in the home. The remaining residents of the home would be three to four developmentally disabled persons,[3] who would live in a family-style setting. These residents would not be related by blood, marriage or adoption. They would work or go to school and would pay "rent" based upon their financial capabilities. The primary purpose of the residential group home was to provide a living situation that was as normal as possible for developmentally disabled residents of the county, who had previously lived with their own families in the community. The alternative was institutionalization, which was substantially more expensive and considerably less desirable for the disabled residents.

Appellant seeks to enjoin this use of the property. The trial court denied the injunction. Viewed by the oft cited standard elucidated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we hold that the trial court erroneously applied the law.

■ The first issue presented is whether the use of the property in question as a group home violates the applicable restrictive covenants and restrictions that limit

---

1. We set out some of the relevant paragraphs of the deed of dedication and restrictions:

   Paragraph 1. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three cars, which if erected, must be attached to the dwelling either directly or by means of a "breezeway."

   *   *   *   *   *   *

   Paragraph 5. No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot, except dogs, cats or other household pets which may be kept, provided they are not kept, bred, or maintained for any commercial purpose.

   Paragraph 6. No more than one family shall live in any residence, except that this covenant shall not prevent occupancy by domestic servants domiciled with an owner or tenant.

   Paragraph 7. No residence shall be used directly or indirectly for business of any character or for any purpose other than that of [a] private residence; except that this will not prevent an individual from transacting a business as long as said business does not create a nuisance or inconvenience to other residents and if said business does not employ any person other than a member of the immediate family which resides in said dwelling. This shall not prevent the owner and developers from using houses as display houses and/or temporary offices during the time of development.

   *   *   *   *   *   *

   Paragraph 9. No commercial vehicles shall be kept on the premises, except commercial vehicles of one (1) ton or less capacity, which must be kept garaged when not in use.

   *   *   *   *   *   *

   Paragraph 12. Signs: No signs, advertisements, billboards, or advertising structure of any kind may be created or maintained on any lot; provided, however, that permission is hereby granted for the erection and maintenance of not more than one advertising board on each lot or tract as sold and conveyed, which advertising board shall not be more than five (5) square feet in size and may be used for the sole and exclusive purpose for advertising for sale or lease the lot or tract upon which it is erected. This shall not prevent the owners or developers from using signs of 12' by 20' maximum to advertise the subdivision during the time of development.

2. This entity is a governmental board appointed by the county for administrative control and management of group residences for disabled persons.

3. The disabled residents would have chronological ages in the late twenties while their developmental/academic ages would be in the range of 10 to 12 years old.

the home in the subdivision to "single-family" or "one-family" residences.[4] Where the term "family" is not defined in the deed restrictions, its meaning must be ascertained from a reading of the document and the use of common sense. We must look at the plain and obvious purpose of the restrictions and give the terms used their ordinary meaning in the context of their usage. *Feely v. Birenbaum*, 554 S.W.2d 432, 435 (Mo.App.1977).

This issue was discussed at length in the *Feely* case, one substantially similar to the instant action. The subdivision trust indenture in *Feely* prohibited use of the houses by "more than one family." The appellate court, in upholding the trial court's determination that two unrelated males living together violated similar deed restrictions, held that the "restrictors" intended "family" to refer to the more traditional definition of that term. So, too, do we find that the term "family" as used in the deed of dedication and restrictions was intended to refer to persons related by blood, marriage or adoption.[5]

Appellant in this case has a legally protected property right that has been infringed upon. *Peters v. Buckner*, 288 Mo. 618, 232 S.W. 1024, 1027 (banc 1921). The restrictive covenants in this case create in appellant an easement in the land used by respondent. Respondents, in their use of the land, have unlawfully appropriated property belonging to appellant. *Britton v. School District*, 328 Mo. 1185, 44 S.W.2d 33, 35 (1931). If the suit was between individuals, appellant would be entitled absolutely to the injunction prayed for and damages in lieu of an injunction would not be considered. *State ex rel. Britton v. Mulloy*, 332 Mo. 1107, 61 S.W.2d 741, 743 (1933). Here, however, the suit is between an individual and a governmental body, therefore, appellant is not necessarily entitled to enjoin respondents from their violation of the restrictive covenants. *Id.*

Since the County of St. Charles is clothed with the power of eminent domain and may exercise that right by condemnation, the deed restrictions, which create in appellant a property right in the constitutional sense, are subordinate to the right of eminent domain and can be extinguished by condemnation proceedings. *Id. See Peters*, 232 S.W. at 1024. Appellant's property rights are, however, within the provisions of Art. I, § 26 of the Missouri Constitution which provides that "private property shall not be taken or damaged for public use without just compensation . . . ."

The order of the trial court is reversed and remanded with directions to continue the case for a reasonable period of time to permit the County of St. Charles to acquire the interest of appellant in the property so appropriated. If the County of St. Charles fails or refuses to do so, then the permanent injunction sought by appellant should be issued. *Britton v. School District*, 44 S.W.2d at 35.

STEWART, P. J., and STEPHAN, J., concur.

---

**4.** We do not reach the question of the possible "commercial" or "business" use of the property since the single-family issue is dispositive.

**5.** *See also Cash v. Catholic Diocese*, 414 S.W.2d 346 (Mo.App.1967) (nuns not a "family"); *Pierce v. St. Louis Union Trust Co.*, 311 Mo. 262, 278 S.W. 398 (1925); *Pierce v. Harper*, 311 Mo. 301, 278 S.W. 410 (1925); 71 A.L.R.3rd 693 (1976).