OPINION OF THE COURT
John G. McCarthy, J.
In this CPLR article 78 proceeding, petitioner seeks to reverse a decision of the respondent Zoning Board which denied its application for a variance.
Petitioner is the lessee of premises located in Brightwaters upon which it maintains a home for teen-age girls known as the Brightwaters Group Home. Such home, which is authorized by the State of New York as a facility for 11 teen-age girls, has been operated on the premises by petitioner for the past eight years. Petitioner maintains constant adult supervision for the girls by a staff which includes two houseparents who each work 40 hours a week. The houseparents, a married couple, are responsible for supervision at the home four nights a week.
The home’s facilities include a kitchen for the residents as well as an area comprised of a bedroom and living room for the married houseparents. Contained in the latter rooms is a small space which contains a small stove, refrigerator and sink. The continued maintenance of this area is the bone of contention for the village building inspector made a determination that the maintenance of the stove, refrigerator and sink constituted the maintenance of a kitchen.
After the above determination was made, petitioner filed an application with the respondent Board requesting a determination that the area in question not be regarded as a kitchen, or in the alternative, for a variance of the local ordinance to permit the maintenance of such facilities for the use of the houseparents.
At a public hearing before the Board, petitioner sought to establish the practical difficulty it experienced of requiring the houseparents to eat all of their meals with the teen-age girls and other staff; that the married houseparents are, on occasion, not on duty when meals are served in the common *876 kitchen; that in a structured environment it would be unwise for the houseparents to eat in the common kitchen during the hours that the kitchen is not open for the girls and other staff and that the convenience of having a separate stove, refrigerator and sink in their quarters enables the houseparents to eat in their quarters rather than at a restaurant during their free time.
Petitioner contends that the record of the proceedings before the Board established that the grant of the variance requested would in no way adversely affect the character of the area; that it is in the interests of all concerned to encourage the houseparents to spend additional time in the home other than during their working hours; that the denial by the Board was not warranted by the record, was illegal, arbitrary and capricious; that petitioner established a practical difficulty and that there is absent any evidence to substantiate the Board’s conclusion that the granting of the requested variance would "be a substantial detriment to the character of the neighborhood and Village.”
The Board denies that its determination and decision in the matter was not warranted by the record, was illegal, unjust, arbitrary, capricious and unauthorized. It also denies that the petitioner established practical difficulty and hardship. It also contends that the application for a building permit should have been made by the owner, not the petitioner, who is a tenant, and that the petition fails to establish proof of "special damages.”
The building inspector denied petitioner’s application for a building permit by letter wherein he quoted a section of the local ordinance (§ 41-47-A). He claimed that the proposed application would produce a second housekeeping unit.
Section 41-47 entitled "Residence A and B Districts” reads in pertinent part as follows:
"Within any Residence A and Residence B Districts as indicated on the Building Zone Map, no building or premises shall be used for other than one (1) or more of the following specified classes of purposes:
"A. One (1) dwelling for one (1) family or one (1) housekeeping unit only.”
The premises in question are in a "Residence B” use district.
The building inspector’s denial also referred to the definition of a "housekeeping unit.” Such definition is found in *877 section 41-2-B of the ordinance. It reads as follows: "Housekeeping Unit — A person or group of persons living as a single household utilizing the same cooking and sanitary facilities.”
The inspector concluded that "Since these cooking facilities are to be located in such a way that they will only be used by the people living in that section of the house, the proposed ’kitchenette’ would produce a second housekeeping unit.”
Is that conclusion which was seconded by the Board justified? The court believes not.
The girls and the houseparents do in truth and in fact live as a single family as that term has been interpreted in New York. The Court of Appeals in City of White Plains v Ferraioli (34 NY2d 300, 305-306) stated: "Whether a family be organized along ties of blood or formal adoptions, or be a similarly structured group sponsored by the State, as is the group home, should not be consequential in meeting the test of the zoning ordinance. So long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance”. (See also, Group House v Board of Zoning & Appeals, 45 NY2d 266.)
The group home is not a "non-conforming use” as respondent urges but a legally permitted one. The houseparents live as one family with the teen-age children. The fact that an additional stove, an additional refrigerator, an additional sink or a combination of all three is available in their bedroom or sitting room does not produce a second housekeeping unit. (Cf., Matter of Baskin v Zoning Bd. of Appeals, 40 NY2d 942, revg 48 AD2d 667.)
The Board was in error in sustaining the building inspector’s unreasonable interpretation of the ordinance.
The court further holds that petitioner had standing to apply for the building permit and has standing to bring this proceeding. The building inspector did not deny the application on the grounds of standing, in fact, respondent has not referred this court to any section of the ordinance which requires an owner, rather than a tenant, to apply for a building permit. Nor was that argument raised before the Board.
The petition is granted to the extent that the determination of the Zoning Board of Appeals is reversed and the building inspector is directed to issue petitioner a building permit.