CITY OF LADUE, Plaintiff-Respondent,

v.

Joan K. HORN and E. Terrence Jones,
Defendants-Appellants.

No. 51415.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 4, 1986.

Motion for Transfer to Supreme Court
Denied Dec. 10, 1986.

Motion for Transfer to Supreme Court
Overruled Feb. 17, 1987.

Frank Susman, Clayton, for defendants-appellants.

F. Douglas O'Leary, St. Louis, for plaintiff-respondent.

CRANDALL, Judge.

Defendants, Joan Horn and E. Terrence Jones, appeal from the judgment of the trial court in favor of plaintiff, City of Ladue (Ladue), which enjoined defendants from occupying their home in violation of Ladue's zoning ordinance and which dismissed defendants' counterclaim. We affirm.

The case was submitted to the trial court on stipulated facts. Ladue's Zoning Ordinance No. 1175 was in effect at all times pertinent to the present action. Certain zones were designated as one-family residential. The zoning ordinance defined family as: "One or more persons related by blood, marriage or adoption, occupying a dwelling unit as an individual housekeeping organization." The only authorized accessory use in residential districts was for "[a]ccommodations for domestic persons employed and living on the premises and home occupations." The purpose of Ladue's zoning ordinance was broadly stated as to promote "the health, safety, morals and general welfare" of Ladue.

■ In July, 1981, defendants purchased a seven-bedroom, four-bathroom house which was located in a single-family residential zone in Ladue. Residing in defendants' home were Horn's two children (aged 16 and 19) and Jones's one child (age 18). The two older children attended out-of-state universities and lived in the house only on a part-time basis. Although defendants were not married, they shared a common bedroom, maintained a joint checking account for the household expenses, ate their meals together, entertained together, and disciplined each other's children.[1] Ladue made demands upon defendants to vacate their home because their household did not comprise a family, as defined by Ladue's zoning ordinance, and therefore they could not live in an area zoned for single-family dwellings. When defendants refused to vacate, Ladue sought to enjoin defendants' continued violation of the zoning ordinance.[2] Defendants counterclaimed, seeking a declaration that the zoning ordinance was constitutionally void. They also sought attorneys' fees and costs. The trial court entered a permanent injunction in favor of Ladue and dismissed defendants' counterclaim. Enforcement of the injunction was stayed pending this appeal.

■ Preliminarily, we note that the ordinance in question clearly restricts the use of the property rather than the character of the structure. Compare *Blevins v. Barry-Lawrence County Ass'n. for Retarded Citizens*, 707 S.W.2d 407 (Mo. banc 1986). It is therefore a legal impossibility to uphold the validity of the ordinance and, at the same time, permit defendants to occupy their residence.

■ In Missouri, the scope of appellate review in zoning matters is limited; and the reviewing court may not substitute its judgment for that of the zoning authority. *Plaas v. Lehr*, 538 S.W.2d 919, 921 (Mo.App.1976). A zoning ordinance is presumed valid. *Deacon v. City of Ladue*,

---

1. Most of these facts are derived from the deposition of Joan K. Horn. The stipulation of facts submitted to the trial court provided, *inter alia*, "That the deposition of Joan K. Horn on file with the court is submitted and maybe [sic] considered by the court along with the facts herein." For the purpose of this opinion we will assume that the facts were not only "considered," but believed to be true by the trial court.

2. Although Ladue's Zoning Ordinance provides for enforcement by fine, courts of equity have jurisdiction to enjoin any use of property which is in violation of a city's zoning ordinance. *See, e.g., City of Kansas City v. Mary Don Co.*, 606 S.W.2d 411, 415 (Mo.App.1980); *City of St. Louis v. Friedman*, 216 S.W.2d 475, 479 (Mo.1948).

294 S.W.2d 616, 624 (Mo.App.1956). The legislative body is vested with broad discretion and the appellate court cannot interfere unless it is shown that the legislative body has acted arbitrarily. *Id.* "If the council's action is fairly debatable, the court cannot substitute its opinion." *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.App.1971).

■ In addition to our scope of review in zoning matters, we are guided by our scope of review in a court-tried case. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Here, the parties did not request, nor did the trial court make, findings on any controverted fact issues. *See* Rule 73.01(a)(2). We therefore assume that all factual determinations were made consistent with the trial court's judgment. *Weiss v. Fayant,* 606 S.W.2d 440, 443 (Mo.App.1980).

Capsulated, defendants' attack on Ladue's ordinance is three-pronged. First, the zoning limitations foreclose them from exercising their right to associate freely with whomever they wish. *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Second, their right to privacy is violated by the zoning restrictions. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Third, the zoning classification distinguishes between related persons and unrelated persons. *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). Defendants allege that the United States and Missouri Constitutions grant each of them the right to share his or her residence with whomever he or she chooses. They assert that Ladue has not demonstrated a compelling, much less rational, justification for the overly proscriptive blood or legal relationship requirement in its zoning ordinance.

Defendants posit that the term "family" is susceptible to several meanings. They contend that, since their household is the "functional and factual equivalent of a natural family," the ordinance may not preclude them from living in a single-family residential Ladue neighborhood. *See, e.g., McMinn v. Town of Oyster Bay,* 66 N.Y.2d 544, 498 N.Y.S.2d 128, 488 N.E.2d 1240 (Ct.App.1985). Defendants argue in their brief as follows:

> The record amply demonstrates that the private, intimate interests of Horn and Jones are substantial. Horn, Jones, and their respective children have historically lived together as a single family unit. They use and occupy their home for the identical purposes and in the identical manners as families which are biologically or maritally related.

To bolster this contention, defendants elaborate on their shared duties, as set forth earlier in this opinion. Defendants acknowledge the importance of viewing themselves as a family unit, albeit a "conceptual family" as opposed to a "true non-family," in order to prevent the application of the ordinance.[3]

■ The fallacy in defendants' syllogism is that the stipulated facts do not compel the conclusion that defendants are living as a family. A man and woman living together, sharing pleasures and certain responsibilities, does not *per se* constitute a family in even the conceptual sense. To approximate a family relationship, there must exist a commitment to a permanent relationship and a perceived reciprocal obligation to support and to care for each other. *See, e.g., State ex rel. Ellis v. Liddle,* 520 S.W.2d 644, 650 (Mo.App.1975). Only when these characteristics are present can the conceptual family, perhaps, equate with the traditional family. In a traditional family, certain of its inherent attributes arise from the legal relationship of the family members. In a non-traditional family, those

---

**3.** The distinction between "conceptual" or "non-traditional" families and true non-families may well be a distinction without a difference, the distinction resting in speculation and stereotypical presumptions. Further, recognition of the conceptual family suffers from the defect of commanding inquiry into who are the users rather than focusing on the use itself. *See generally* Note, City of Santa Barbara v. Adamson: An Associational Right of Privacy and the End of Family Zones, 69 Calif.L.Rev. 1052, 1068–70 (1981).

same qualities arise in fact, either by explicit agreement or by tacit understanding among the parties.

While the stipulated facts could arguably support an inference by the trial court that defendants and their children comprised a non-traditional family, they do not compel that inference. Absent findings of fact and conclusions of law, we cannot assume that the trial court's perception of defendants' familial status comported with defendants' characterization of themselves as a conceptual family. In fact, if a finding by the trial court that defendants' living arrangement constituted a conceptual family is critical to a determination in defendants' favor, we can assume that the court's finding was adverse to defendants' position. Ordinarily, given our deference to the decision of the trial court, that would dispose of this appeal. We decline, however, to restrict our ruling to such a narrow basis. We therefore consider the broader issues presented by the parties. We assume, *arguendo*, that the sole basis for the judgment entered by the trial court was that defendants were not related by blood, marriage or adoption, as required by Ladue's ordinance.

We first consider whether the ordinance violates any federally protected rights of the defendants. Generally, federal court decisions hold that a zoning classification based upon a biological or a legal relationship among household members is justifiable under constitutional police powers to protect the public health, safety, morals or welfare of the community. *See* P. Rohan, Zoning and Land Use Controls, § 3.04[2][a] (1986).

■ More specifically, the United States Supreme Court has developed a two-tiered approach by which to examine legislation challenged as violative of the equal protection clause. If the personal interest affected by the ordinance is fundamental, "strict scrutiny" is applied and the ordinance is sustained only upon a showing that the burden imposed is necessary to protect a compelling governmental interest. If the ordinance does not contain a suspect class

or impinge upon a fundamental interest, the more relaxed "rational basis" test is applied and the classification imposed by the ordinance is upheld if any facts can reasonably justify it. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Defendants urge this court to recognize that their interest in choosing their own living arrangement inexorably involves their fundamental rights of freedom of association and of privacy.

In *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) and in *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928), the United States Supreme Court also established the due process parameters of permissible legislation. The ordinance in question must have a "foundation in reason" and bear a "substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow*, 277 U.S. at 187–88, 48 S.Ct. at 448 (quoting *Euclid*, 272 U.S. at 395, 47 S.Ct. at 121).

In the *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the court addressed a zoning regulation of the type at issue in this case. The court held that the Village of Belle Terre ordinance involved no fundamental right, but was typical of economic and social legislation which is upheld if it is reasonably related to a permissible governmental objective. *Id.* at 7–8, 94 S.Ct. at 1540. The challenged zoning ordinance of the Village of Belle Terre defined family as:

One or more persons related by blood, adoption or marriage, living and cooking together as a single housekeeping unit [or] a number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage....

The court upheld the ordinance, reasoning that the ordinance constituted valid land use legislation reasonably designed to maintain traditional family values and patterns.

The importance of the family was reaffirmed in *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), wherein the United States Supreme Court was confronted with a housing ordinance which defined a "family" as only certain closely related individuals. Consequently, a grandmother who lived with her son and two grandsons was convicted of violating the ordinance because her two grandsons were first cousins rather than brothers. The United States Supreme Court struck down the East Cleveland ordinance for violating the freedom of personal choice in matters of marriage and family life. The court distinguished *Belle Terre* by stating that the ordinance in that case allowed all individuals related by blood, marriage or adoption to live together; whereas East Cleveland, by restricting the number of related persons who could live together, sought "to regulate the occupancy of its housing by slicing deeply into the family itself." *Id.* at 498, 97 S.Ct. at 1935. The court pointed out that the institution of the family is protected by the Constitution precisely because it is so deeply rooted in the American tradition and that "[o]urs is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family." *Id.* at 504, 97 S.Ct. at 1938.

Here, because we are dealing with economic and social legislation and not with a fundamental interest or a suspect classification, the test of constitutionality is whether the ordinance is reasonable and not arbitrary and bears a rational relationship to a permissible state objective. *Belle Terre,* 416 U.S. at 7–8, 94 S.Ct. at 1540. "[E]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function." *Id.* at 8, 94 S.Ct. at 1540. (footnote omitted).

Ladue has a legitimate concern with laying out guidelines for land use addressed to family needs. "It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Id.* at 9, 94 S.Ct. at 1541. The question of whether Ladue could have chosen more precise means to effectuate its legislative goals is immaterial. Ladue's zoning ordinance is rationally related to its expressed purposes and violates no provisions of the Constitution of the United States. Further, defendants' assertion that they have a constitutional right to share their residence with whomever they please amounts to the same argument that was made and found unpersuasive by the court in *Belle Terre.*

We next consider whether the Ladue ordinance violates any rights of defendants protected by the Missouri Constitution. Defendants rely on several Missouri cases which they allege have "expanded the definition of 'family.'" We disagree with defendants' conclusion.

In *State ex rel. Ellis v. Liddle,* 520 S.W.2d 644 (Mo.App.1975), the zoning ordinance divided the term "family" into two distinct categories, as follows:

First, "one or more persons related by blood, marriage, or adoption living together in one dwelling unit" in a "common household" including servants, guests, boarders, roomers or lodgers. The ordinance places no limitation on the number of such persons occupying the dwelling unit. Second, persons "not related by blood, marriage, or adoption". Such occupancy may not exceed 10 persons in any one dwelling unit.

*Id.* at 650. Given this definition, the court permitted the operation of a group home for six to eight juvenile boys and two "teaching parents" in a single-family residential neighborhood in Maryville, Missouri. The court stated that it was clear that, *"both under the specific terms of the ordinance* and under common law" (emphasis added), the operation of the group home did no violence to the single-family residence requirement.

In *City of Vinita Park v. Girls Sheltercare, Inc.,* 664 S.W.2d 256 (Mo.App.1984), this court allowed the use of a single-family residence as a girls' group home operated by the Juvenile Court of St. Louis Coun-

ty in the City of Vinita Park. The Vinita Park Zoning Ordinance defined family as "[o]ne or more persons related by blood or marriage occupying a premises and living as a single housekeeping unit." *Id.* at 258. The housing ordinance contained a more expansive definition of family:

[A]n individual or married couple and the children thereof and no more than two other persons related directly to the individual or married couple by blood or marriage and not more than three persons not related by blood or marriage living together as a single housekeeping unit in a dwelling unit.

*Id.* at 259 n. 1.

The court stated that, although the group did not "conform to the letter of either of the *ordinances* which defines family," it did conform to "the spirit of the *ordinances.*" *Id.* at 259. (emphasis added). After addressing the "family" issue, the court addressed what it referred to as the "pivotal issue" of the case concerning what limitations there are on the power of a municipality to zone public uses. The court held that "the leasing of the premises pursuant to the statutory authority for the county and juvenile court to establish a group home is a governmental function (use) and thereby immune from the City of Vinita Park's zoning ordinance." *Id.* at 262.

In both of these cases, the reviewing court looked to the definition of family as set forth in the ordinance. Defendants' argument that these cases "expand" the definition of family is unpersuasive. The clear implication of these cases is that the

appellate court will give deference to a zoning ordinance, particularly when there is no overriding governmental interest or statutory authority to negate the legislative prerogative to define family based upon biological or legal relationships.

For purposes of its zoning code, Ladue has in precise language defined the term family. It chose the definition which comports with the historical and traditional notions of family; namely, those people related by blood, marriage or adoption. That definition of family has been upheld in numerous Missouri decisions. *See, e.g., London v. Handicapped Facilities Board of St. Charles County,* 637 S.W.2d 212 (Mo. App.1982) (group home not a "family" as used in restrictive covenant); *Feely v. Birenbaum,* 554 S.W.2d 432 (Mo.App.1977) (two unrelated males not a "family" as used in restrictive covenant); *Cash v. Catholic Diocese,* 414 S.W.2d 346 (Mo.App. 1967) (nuns not a "family" as used in a restrictive covenant).

Decisions from other state jurisdictions have addressed identical constitutional challenges to zoning ordinances similar to the ordinance in the instant case. The reviewing courts have upheld their respective ordinances on the ground that maintenance of a traditional family environment constitutes a reasonable basis for excluding uses that may impair the stability of that environment and erode the values associated with traditional family life.[4]

The essence of zoning is selection; and, if it is not invidious or discriminatory against those not selected, it is

---

4. *See, e.g., City of White Plains v. Ferraioli,* 34 N.Y.2d 300, 357 N.Y.S.2d 449, 313 N.E.2d 756 (1974) (married couple, their two children and 10 foster children not a family under city's ordinance); *Rademan v. City and County of Denver,* 186 Colo. 250, 526 P.2d 1325 (1974) (two married couples living as a "communal family" not a family); *Town of Durham v. White Enterprises, Inc.,* 115 N.H. 645, 348 A.2d 706 (1975) (student renters not a family); *Prospect Gardens Convalescent Home, Inc. v. City of Norwalk,* 32 Conn.Sup. 214, 347 A.2d 637 (1975) (nursing home employees living together not a family). *See generally* Annot., 12 A.L.R. 4th 238 (1985). A number of jurisdictions have found restrictive

zoning ordinances invalid. *See, e.g., City of Des Plaines v. Trottner,* 34 Ill.2d 432, 216 N.E.2d 116 (1970) (ordinance with restrictive definition of family violates authority delegated by state legislature in the enabling statute); *City of Santa Barbara v. Adamson,* 27 Cal.3d 123, 164 Cal. Rptr. 539, 610 P.2d 436 (1982) (zoning ordinance limiting the number of unrelated persons who could live together, but not related persons, did not further legislative goals); *Charter Township of Delta v. Dinolfo,* 419 Mich. 253, 351 N.W.2d 831 (1984) (restrictive definition of family not rationally related to achieving township's goals).

proper. *Town of Durham v. White Enterprises, Inc.*, 115 N.H. 645, 348 A.2d 706 (1975). There is no doubt that there is a governmental interest in marriage and in preserving the integrity of the biological or legal family. There is no concomitant governmental interest in keeping together a group of unrelated persons, no matter how closely they simulate a family. Further, there is no state policy which commands that groups of people may live under the same roof in any section of a municipality they choose.

 The stated purpose of Ladue's zoning ordinance is the promotion of the health, safety, morals and general welfare in the city. Whether Ladue could have adopted less restrictive means to achieve these same goals is not a controlling factor in considering the constitutionality of the zoning ordinance. Rather, our focus is on whether there exists some reasonable basis for the means actually employed. In making such a determination, if any state of facts either known or which could reasonably be assumed is presented in support of the ordinance, we must defer to the legislative judgment. We find that Ladue has not acted arbitrarily in enacting its zoning ordinance which defines family as those related by blood, marriage or adoption. Given the fact that Ladue has so defined family, we defer to its legislative judgment.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.