CARROLL ET AL., APPELLANTS, *v.*
WASHINGTON TOWNSHIP ZONING
COMMISSION ET AL., APPELLEES.

[Cite as Carroll v. Washington Twp. (1980),
63 Ohio St. 2d 249.]

(No. 79-873—Decided July 30, 1980.)

*Mr. Gordon J. Beggs* and *Ms. Helen Baker,* for appellants.
*Mr. Harry M. Welsh,* assistant prosecuting attorney, for appellees.

*Per Curiam.* Appellants reside on a tract of land located in a R-1 use district. The Washington Township zoning resolution permits "one family residential dwelling units" in R-1 districts, without defining any of these terms.

Appellants contend that the use of their property as a foster home complies with the township zoning regulations applicable to R-1 districts. Alternatively, they, in effect, argue that, insofar as the zoning resolution may prohibit them from operating a foster home on their property, its use restrictions violate the due process provisions of the United States and Ohio Constitutions.

Appellees, on the other hand, first argue that on the specific facts adduced here appellants' operation does not constitute a "one family residential dwelling unit" which the Washington Township resolution requires.

Secondly, appellees argue that appellants' use of the subject property is commercial in nature, that such a use is pro-

hibited by the resolution, and, further, that a commercial use may be constitutionally excluded from a residential district.

We need not dwell on appellees' contention that appellants operate their foster home as a commercial venture, in that this case may be resolved on the basis as discussed and determined by the Court of Appeals below, *i.e.*, whether appellants' foster home qualifies as a "one family residential dwelling unit," as that phrase is used in the township resolution. We conclude that the trial court and the Court of Appeals reasonably found that it did not.

Through the passage of R. C. 519.01 *et seq.* the General Assembly has authorized boards of township trustees to adopt, with the consent of the electors of the township, comprehensive zoning resolutions. There is no restriction either in the laws relating to township zoning, or in any other state statute that would either prohibit zoning classifications in reference to this type of operation of providing foster homes, or which would exempt this operation from local zoning resolutions or ordinances.

Washington Township adopted a zoning resolution providing for various classifications of uses. The property occupied by appellants is in an area zoned R-1 residential district. Section 4(A) of the resolution, which describes this district, in part, provides:

"Permitted Uses

"1.  One family residential dwelling units."

In *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365, the Supreme Court of the United States, in holding local zoning ordinances constitutional, stated, at page 388:

"* * * If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. * * *"

And, at page 395, the court stated:

"If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and

unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.***"

The term "family," when used without definition in a residential use restriction, must be interpreted in light of permissible zoning objectives. A political subdivision may legitimately segregate land uses in order to, *inter alia,* provide adequate fire and police protection, decrease noise and noxious odors, control traffic flow, limit land use intensity, and create reasonably secure and stable residential neighborhoods. The attainment of "[a] quiet place where yards are wide, people few, and motor vehicles restricted***" is a reasonable goal of land use legislation. *Village of Belle Terre* v. *Boraas* (1974), 416 U.S. 1, 9.

Here, as the Court of Appeals aptly stated, the issue is not whether the appellants' operation could constitute a family under definitions as might be found in some other township resolution or municipal ordinance, but whether this operation is a "one family residential dwelling unit" under this township resolution.

The Court of Appeals reasoned that the township zoning resolution under consideration here intended that, to constitute a "one family residential dwelling unit," the members of the household must be so integrated into "one family" as to constitute a single family within the ordinary and usual understanding as to the functions for which single families exist. Foster children may or may not qualify as members of such a single family, depending upon the degree of their integration within the family.

The Court of Appeals, finding that a foster home was not *per se* in violation of this township zoning ordinance, held that upon this record the trial court as trier of the facts did not err in finding that this foster home did not qualify as a "one family residential dwelling unit."

Although the line may seem infinitesimally narrow as to what may be considered a single family unit, we hold here that the trial court and the Court of Appeals could reasonably have concluded that the Carrolls and the foster children were not functioning as a single family unit within the meaning of the Washington Township zoning resolution.

The facts show that the children are placed with the Car-

rolls under separate contracts, that the children are in effect transients, staying varying periods from six months to a year, and that to accommodate these children the Carrolls engaged in rather extensive remodeling to make this residence suitable for this type of operation. There are rules and regulations established by the OYC that the Carrolls must follow in conducting this operation, and, in turn, the Carrolls formulated certain rules and regulations which they required the children to follow. Upon such facts the trial court and Court of Appeals reasonably determined that this operation violated the Washington Township zoning ordinance.

Local governments may, through the passage of zoning-type legislation, reasonably restrict the use of land into districts with the aim of promoting the public health, safety, morals and welfare. There is no constitutional prohibition in denying certain uses of one's property in a comprehensive plan for the development of communities for the common welfare of the community. *Euclid* v. *Ambler Realty Co., supra.* A comprehensive township zoning plan which excludes a use of this type is not *per se* unconstitutional.

The exercise of local discretion in areas of social and economic legislation will be approved where it is in accordance with law and not in conflict with general law as enacted by the General Assembly; and where such local enactments are reasonable, not arbitrary, and bear a reasonable relationship to a permissible governmental objective.

Here, the Court of Appeals found the township zoning ordinance to be a reasonable enactment of the township governing body and that the particular facts presented showed a violation of such local zoning resolution.

Finding the determination of the Court of Appeals not contrary to law, we hereby affirm its judgment.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

PAUL W. BROWN, J., dissenting. The majority's resolution of this cause is supported neither by logic nor by case law from this jurisdiction or any other. It is a fundamental tenet

that zoning ordinances which impose restrictions on the use of private property are to be strictly construed. *State, ex rel. Ice & Fuel Co.*, v. *Kreuzweiser* (1929), 120 Ohio St. 352, 356. Yet, the majority has read the term "one family residential dwelling unit" contained within the Washington Township zoning resolution to restrict the R-1 area in question to one-family *integrated* residential dwelling units. The significance or purpose of this requirement of integration, conceived by the Court of Appeals and seized upon by the majority, is left unexplained. A test to determine if a family is integrated is not set forth; there is only a passing reference made to an infinitesimally narrow line being drawn to exclude the Carrolls' use of their property in the instant cause.

The majority opinion is premised upon the reasonableness of the lower courts' determination that the home maintained by the Carrolls was not sufficiently integrated to constitute a family. No such finding, however, was made by the trial court. It merely found that the desired use was prohibited in this R-1 district, without stating what factors led to this conclusion. The decision of the trier of fact makes no reference to integration, not being aware of this soon to be created doctrine.

The factors relied upon by the majority to indicate that the Carroll family was not integrated could be used to conclude that any foster family, even a family with only one foster child, is not permissible within a R-1 district. Emphasis was placed upon the fact that the children were placed in the home under separate contracts, but in any foster situation formal agreements must be made with the agency placing the children. Secondly, the children are deemed to be transients by the majority because they stayed with the Carrolls from six months to a year. This very situation was discussed at length in *Group House of Port Washington* v. *Board of Zoning* (1978), 45 N.Y. 2d 266, 273, 380 N.E. 2d 207, wherein it was stated that:

"Any foster care program, whether it be petitioner's 'group home' for seven foster children or the somewhat larger 'group home' challenged in *White Plains,* is in a very real way 'temporary,' since foster care by its very nature is simply a method of caring for children until they can either be returned to their natural parents or until an adoptive home can be found for them. Thus, the argument that petitioner's 'group home' is

not a family simply because petitioner hopes to eventually return the children to their natural families is unconvincing. If this rationale were accepted, it could as readily be applied to allow the exclusion of a family with more than two foster children under this town ordinance. Such a result would, of course, be absurd. The flaw in respondent's position is that it would have us simply take the word 'temporary,' give it some talismanic significance, and apply it to exclude any 'group home' regardless of the underlying realities.

"Petitioner's very purpose is to create a stable, family type environment for children whose natural families unfortunately cannot provide such a home. As such, petitioner's 'group home' would in no way detract from the family and youth values which one-family zoning is intended to protect. In fact, petitioner's 'group home' might actually support and further those values even more effectively than certain natural families. If petitioner's 'group home' is to be a success, it would most appropriately be placed in just such a quiet, residential neighborhood, for that is the very type of atmosphere which it seeks to emulate.

"The surrogate family which petitioner hopes to create is in fact a permanent family structure, and not a temporary residence for transients. Although some of the resident children will be replaced by others as time passes, the family unit itself will continue."

The reasoning of that case is sound and directly applicable to the facts of the instant cause. What is present here is a permanent family structure, and although the children do not remain with the Carrolls on a permanent basis, they are part of a family unit that is continuing.[1] Earlier this term this court stated:

---

[1] The concept of the transitory nature of housekeeping units not based upon the traditional family model was further reviewed in the case of *Des Plaines* v. *Trottner* (1966), 34 Ill. 2d 432, 437, 216 N.E. 2d 116, where it was stated:

"In terms of permissible zoning objectives, a group of persons bound together only by their common desire to operate a single housekeeping unit, might be thought to have a transient quality that would affect adversely the stability of the neighborhood, and so depreciate the value of other property. An ordinance requiring relationship by blood, marriage or adoption could be regarded as tending to limit the intensity of land use. And it might be considered that a group of unrelated persons would be more likely to generate traffic and parking problems than would an equal number of related persons.

"In *Smith* v. *Organization of Foster Families* (1977), 431 U.S. 816, the court went so far as to recognize some family rights for foster parents. It is clear from these cases that a parent and a child have substantial, protected rights in their family relationship under the due process clause." *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 10. See, also, *Moore* v. *East Cleveland* (1977), 431 U.S. 494. Yet, in this cause, the majority has penetrated deeply into the internal composition of this family unit. The majority has forgotten that, "[z]oning is intended to control types of housing and living and not the genetic or intimate internal family relations of human beings." *White Plains* v. *Ferraioli* (1974), 34 N.Y. 2d 300, 305, 313 N.E. 2d 756.

Additional reasons enumerated for the conclusion reached by the majority in this cause are the remodeling that the Carrolls carried out, the rules which the Ohio Youth Commission imposed upon the Carrolls and the rules that they in turn imposed upon the children. The relevance of the remodeling is dubious at best, while the rules involved were established to maintain the proper environment for the children and to maintain discipline and orderliness in the Carroll home. How these rules bring the Carroll family into conflict with the zoning provision is not apparent.

Assuming, *arguendo,* that the concept of integration somehow found its way into the zoning scheme it has not been demonstrated at any level of this cause that the Carroll family is not integrated. At best this court should remand for a determination of this matter.

I would, however, not impose an integration requirement in any form whatsoever. The interjection of this concept merely forces the courts to intrude into genetic or internal family relations, when such intrusion is unnecessary. In the instant cause I would use a definition similar to that set out by Justice Tobriner in *Brady* v. *Superior Court* (1962), 200 Cal. App. 2d 69, 77, 19 Cal. Rptr. 242, where he stated:

" 'Single family dwelling' designates the joint occupancy and use of the dwelling by all of those who live there. The word

---

*"But none of these observations reflects a universal truth.* Family groups are mobile today, and not all family units are internally stable and well-disciplined." (Emphasis added.)

'single' precludes the segregation of certain portions or rooms for rental. It forecloses *multiple* occupancy of certain portions of the unit for rental as a segregated part, or parts, of the unit. 'Dwelling' means the whole of the premises used for living purposes. It must include the use of the common rooms, such as the kitchen, dining room, living room, if any, by all occupants. It refers to, and reinforces, the concept of singular use, as opposed to multiple. The 'dwelling' cannot be fragmentized into broken bits of housing for rental return. 'Family' signifies living as a family; it inhibits the breaking up of the premises into segregated units."

Such a definition would not put this court at odds with the overwhelming majority of other jurisdictions that have considered matters such as that presented here. In a recent New Jersey Supreme Court case an extensive survey of the courts was made and it was stated that:

"The courts of this and other states have often noted that the core concept underlying single family living is not biological or legal relationship but, rather, its character as a single house-keeping unit. *Berger* v. *State, supra,* 71 N.J. at 227, 364 A. 2d 993. See *Kirsch Holding Co.* v. *Borough of Manasquan, supra,* 59 N.J. at 250, 281 A. 2d 513; *City of Des Plaines* v. *Trottner, supra; Boston-Edison Protective Ass'n* v. *Paulist Fathers,* 306 Mich. 253, 10 N.W. 2d 847 (Sup. Ct. 1943); *City of White Plains* v. *Ferraioli,* 34 N.Y. 2d 300, 305-307, 357 N.Y.S. 2d 449, 452-454, 313 N.E. 2d 756, 758-759 (Ct. App. 1974). As long as a group bears the 'generic character of a family unit as a relatively permanent household,' it should be equally as entitled to occupy a single family dwelling as its biologically related neighbors. *City of White Plains, supra,* 34 N.Y. 2d at 306, 357 N.Y.S. 2d at 453, 313 N.E. 2d at 758; see, *e.g., Brady* v. *Superior Ct.,* 200 Cal. App. 2d 69, 19 Cal. Rptr. 242 (Dist. Ct. App. 1962); *Oliver* v. *Zoning Comm'n of Chester,* 31 Conn. Sup. 197, 326 A. 2d 841 (C.P. Middlesex Cty. 1974); *Carroll* v. *City of Miami Beach,* 198 So. 2d 643 (Fla. Dist. Ct. App. 1967); *Group House of Port Washington, Inc.* v. *Board of Zoning,* 45 N.Y. 2d 266, 408 N.Y.S. 2d 377, 380 N.E. 2d 207 (Ct. App. 1978); *Little Neck Comm. Ass'n* v. *Working Org. for Retarded Children,* 52 A.D. 2d 90, 383 N.Y.S. 2d 364 (App. Div. 1976); *Missionaries of Our*

*Lady of La Salette* v. *Village of Whitefish Bay,* 267 Wis. 609, 66 N.W. 2d 627 (Sup. Ct. 1954)." *State* v. *Baker* (1979), 81 N.J. 99, 405 A. 2d 368, at page 372. See, also, *Hessling* v. *Broomfield* (1977), 193 Colo. 124, 563 P. 2d 12.

Additionally, the policy considerations associated with foster homes, like the one maintained by the Carrolls, weigh in favor of permitting such homes wherever possible, particularly in residential neighborhoods. As the New York Court of Appeals has noted:

"The group home concept is relatively new; instead of being institutionalized, neglected or abandoned youngsters are divided into small groups and placed in homes with an adult couple, approximating a normal family environment. In this way, it is thought, the children obtain many of the benefits of home life. Siblings may be kept together. Whatever other advantages there are to the group home, it is also less costly than institutionalized care." *White Plains* v. *Ferraioli, supra,* at pages 303-304.

Homes such as the one involved in the instant cause are designed to conform to the character of the neighborhood, and there has been no showing made that the Carrolls' use of their home has conflicted with the primarily agricultural character of the area in which they live.[2] Accordingly, I would reverse the Court of Appeals.

---

[2] No claim has been made that the foster children have been disruptive. Even if such a claim had been made, this is not a proper concern of zoning. It has been properly stated:

"Ordinarily obnoxious personal behavior can best be dealt with officially by vigorous and persistent enforcement of general police power ordinances and criminal statutes***. Zoning ordinances are not intended and cannot be expected to cure or prevent most anti-social conduct in dwelling situations." *Kirsch Holding Co.* v. *Borough of Manasquan* (1971), 59 N.J. 241, 253-254, 281 A. 2d 513.