CITY OF WESTERVILLE, APPELLEE,
*v.* KUEHNERT ET AL., APPELLANTS.

(No. 87AP-207—Decided
June 28, 1988.)

*Metz, Bailey & Spicer, Roy E. Metz, Kenneth J. Spicer* and *Jeffrey D. Mackey,* for appellee.

*Grant D. Shoub* and *Karen S. Darby,* for appellants Elizabeth Jean Kuehnert and Carl Kuehnert.

*Poulos & Hunter* and *John G. Poulos,* for appellant Myrtle Humphrey.

*Catherine E. Huston,* for intervening defendants-appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Timothy Mangan,* for *amicus curiae* Ohio Department of Mental Retardation and Developmental Disabilities.

BOWMAN, J. In August 1984, appellee, city of Westerville ("Westerville"), filed an action in the Franklin County Court of Common Pleas to enjoin and restrain appellants, Elizabeth and Carl Kuehnert ("the Kuehnerts"), and Myrtle Humphrey and her successor-in-interest Humphrey Homes, Inc. ("Humphrey"), from operating "foster family homes" as defined in R.C. 5123.19(A)(6) in an R-1, R-2 and Planned Neighborhood Development ("PND") zoning district in the city of Westerville. Appellants-residents ("residents") of the home were granted leave to intervene. Following a trial, the court found the homes to be businesses and institutions and not permitted uses within an R-1, R-2 or PND district and granted the injunction.

The Kuehnerts set forth the following assignments of error:

"I. The trial court's judgment is contrary to the city of Westerville's zoning ordinances, which specifically permit a household use such as defendants' in an R-1 single family district and in a planned neighborhood district.

"II. The trial court's judgment is contrary to Ohio law, which mandates that zoning ordinances be strictly construed.

"III. The trial court's judgment is not sustained by the evidence and is against the manifest weight of the evidence.

"IV. The trial court's judgment violates Sections 1, 16 and 19 of Article I of the Ohio Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

"V. The trial court's judgment is contrary to law in that plaintiff's action against these defendants is barred by the doctrine of estoppel."

Humphrey sets forth the following assignments of error:

"I. The trial court erred in ruling that the city of Westerville zoning ordinance did not permit a household as a permitted use by the defendants-appellants' use of the foster family home in the R-1 and Planned Neighborhood District.

"A. Zoning ordinances restrict an individual's right to use his property freely and must be strictly construed against the municipality.

"B. Courts in Ohio as well as other states have found foster family homes to be permissible uses in residential districts.

"C. As interpreted by the zoning officer, Westerville zoning ordinances permit homes for developmentally disabled individuals in residential districts in Westerville.

"D. Defendants' homes are neither institutions nor businesses.

"II. The trial court erred in ruling contrary to Ohio law, which mandates the operation of foster family homes for developmentally/disabled individuals must be strictly construed against the municipality.

"III. The trial court erred in that the judgment violates Sections 1, 16 and 19 of Article One of the Ohio Constitution and the Equal Protection Clause of the United States Constitution.

"A. A zoning ordinance which prohibits foster family homes for developmentally disabled individuals in [a] residential district is a violation of the Fourteenth Amendment to the United States Constitution.

"B. A zoning ordinance which prohibits foster family homes for [the] developmentally disabled in residential districts is a violation of 29 U.S.C. Section 794.

"IV. The trial court erred in that the judgment was not sustained by the weight of the evidence and is against the manifest weight of the evidence.

"V. The trial court erred in ruling contrary to law that the city of Westerville was not barred by the doctrine of estoppel."

The residents set forth the following assignments of error:

"1. The trial court erred in holding that appellant-residents' homes are not permitted uses in R-1 and PND zoning districts and that appellant-residents are not a household as defined by the codified ordinances of the city of Westerville.

"2. The trial court erred in finding no violation of federal law because the evidence shows that the only basis for different treatment of appellant-residents' home is their handicapping condition.

"A. A zoning ordinance which prohibits foster family homes for [the] developmentally disabled in residential districts is a denial of equal protection under the Fourteenth Amendment to the United States Constitution.

"B. A zoning ordinance which prohibits foster family homes for the developmentally disabled in residential districts is a violation of 29 U.S.C. Section 794.

"3. The trial court erred in find-

ing no violation of appellant-residents' rights under Ohio law."

The Kuehnerts' assignments of error one, two and three; Humphrey's assignments of error one, two and four; and the residents' assignment of error one are related and will be considered together.

In *Garcia* v. *Siffrin Residential Assn.* (1980), 63 Ohio St. 2d 259, 17 O.O. 3d 167, 407 N.E. 2d 1369, the Ohio Supreme Court held unconstitutional those provisions of R.C. 5123.18(D), (E) and (G) (now R.C. 5123.19[L], [M] and [O]), which had provided that group homes could be placed in any residential district or zone regardless of local zoning restrictions. The court held that "family homes," as defined in R.C. 5123.18 (A)(3) (now R.C. 5123.19[A][3]), had to comply with local zoning laws. From the evidence presented, the court concluded that the family home proposed to be operated by Siffrin did not fall within the definition of "family" in the Canton Zoning Code and was not a permitted use. On the same day *Garcia* was decided, the court also decided *Carroll* v. *Washington Twp. Zoning Comm.* (1980), 63 Ohio St. 2d 249, 17 O.O. 3d 161, 408 N.E. 2d 191, which held a foster home for children placed by the Ohio Youth Commission was not a permitted use in an area zoned for one-family residential dwelling units.

Since the decisions in *Carroll* and *Garcia,* the court has granted them little deference. In *Saunders* v. *Clark Cty. Zoning Dept.* (1981), 66 Ohio St. 2d 259, 20 O.O. 3d 244, 421 N.E. 2d 152, the court, on almost the same facts as *Carroll* and *Garcia,* concluded that a group home for delinquent boys was a permitted use in a R-1 suburban residence district by giving a broad meaning to the term "family" as defined in the Clark County Zoning Resolution as more than two persons living together as a single housekeep-

ing unit. See, also, *White* v. *Bd. of Zoning Appeals of Madison Twp.* (1983), 6 Ohio St. 3d 68, 6 OBR 111, 451 N.E. 2d 756.

In *Shroades* v. *Rental Homes, Inc.* (1981), 68 Ohio St. 2d 20, 22 O.O. 3d 152, 427 N.E. 2d 774, footnote 6, a concurring opinion stated:

"Similarly, *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259, was overruled *sub silentio* in *Saunders* v. *Zoning Department* (1981), 66 Ohio St. 2d 259. * * * Having recognized that *Garcia* is now a dead letter, it cannot be given precedential value." *Id.* at 28, 22 O.O. 3d at 157, 427 N.E. 2d at 779.

In their dissenting opinion in *Saunders, supra,* Justices Holmes and Locher conceded that *Garcia* had been in effect overruled. See, also, *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88, 23 O.O. 3d 145, 431 N.E. 2d 311.

However, as stated by the Ohio Supreme Court in *State, ex rel. Donahey,* v. *Edmondson* (1913), 89 Ohio St. 93, 107-108, 105 N.E. 269, 273:

"* * * It has long been the rule of this court that the syllabus contains the law of the case. It is the only part of the opinion requiring the approval of all the members concurring in the judgment. Where the judge writing an opinion discusses matters or gives expression to his views on questions not contained in the syllabus, it is merely the personal opinion of that judge. The judges concurring in the judgment and the law as announced in the syllabus are not required or expected to express their concurrence in or their dissent from matters merely *obiter.*"

Thus, despite appellants' assertion to the contrary, *Garcia* having never been overruled still retains precedential value. Any statement to the contrary in any other cases was merely the expression of the writer of the concurring or dissenting opinion.

Therefore, in order to be valid per-

mitted uses in Westerville, the homes operated by Humphrey and the Kuehnerts must comply with the Westerville zoning requirements.

The evidence before the trial court showed each of the four group homes is a residential facility operated as a family foster home. "Residential facility" was defined in R.C. 5123.19(A)(1) and (6) as follows:

"(1) 'Residential facility' means a home or facility in which a person with a developmental disability resides, except the home of a relative or legal guardian in which a person with a developmental disability resides.

"* * *

"(6) 'Foster family home' means a residential facility that provides room and board, personal care, rehabilitation services, and supervision in a family setting for not more than five persons with developmental disabilities." Am. Sub. H.B. No. 238 (141 Ohio Laws, Part II, 2761, 2859).

All of the homes operate in essentially the same manner. Each is operated by a for-profit proprietorship (Humphrey) or a for-profit corporation (Kuehnerts). Each home is licensed by the state of Ohio and has four residents placed by the Ohio Department of Mental Retardation and Developmental Disabilities and one full-time employee. Pursuant to a contract with the state of Ohio, Humphrey and the Kuehnerts are reimbursed at a daily rate established by the state for the cost of each resident. Each resident pays for services provided at the established rate with the balance, if any, being paid by the state. Humphrey and the Kuehnerts operate the homes in question, as well as others not the subject of this case, from a business address outside the Westerville area. None of the business or accounting activities take place in any of the four homes. Humphrey and the Kuehnerts are paid salaries with fringe benefits by their respective business entities.

Each of the four homes has several bedrooms, two bathrooms, and one kitchen. The four residents of the Humphrey home were the same residents at the time of trial as when the operation began in 1982. Eight of the twelve residents of the Kuehnerts' homes are the same as when operations commenced. Of the twelve residents in the Kuehnerts' homes, only one was from an institution, the others had been living in various other locations in the community. The residents are either employed at sheltered workshops or attend schools. Meals are prepared and household chores are performed as a group under supervision of a full-time employee. No medical care is provided on the premises. Since none of the residents is able to drive, a car is assigned to each home. State regulations require the staff member to be present on the premises at all times. The Humphrey home is being purchased on a land contract, two of the Kuehnerts' homes are leased, and one is being purchased.

Zoning ordinances are in derogation of the common law. They deprive a property owner of uses of his land to which he would otherwise be entitled and, therefore, when interpretation is necessary, such enactments are normally construed in favor of the property owner. *In re Appeal of University Circle, Inc.* (1978), 56 Ohio St. 2d 180, 10 O.O. 3d 346, 383 N.E. 2d 139. Statutes or ordinances which impose restrictions upon the use of private property will be strictly construed and their scope cannot be extended to include limitations not clearly prescribed. *State, ex rel. Moore Oil Co.,* v. *Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232; *State, ex rel. Spiccia,* v. *Abate* (1965), 2 Ohio St. 2d 129, 31 O.O. 2d 228, 207 N.E. 2d 234.

The trial court found that the homes operated by Humphrey and the Kuehnerts were businesses and institutions, not family dwellings. The trial

court, however, focused on the owners of the property rather than the use of the property by the residents. Zoning ordinances have reference to land use rather than to persons who own the land. *State, ex rel. Parker,* v. *Konopka* (1963), 119 Ohio App. 513, 28 O.O. 2d 133, 200 N.E. 2d 695.

The trial court found that the homes in question could not be considered as family dwellings. The court specifically stated:

"* * * No amount of mental gymnastics could consider these homes as family dwellings within the normal and accepted use of such term. These occupants are unrelated. The owners do not dwell in the home, but in effect, have a live-in, paid supervisor who helps train the occupants in certain skills and abilities. These supervisors are replaced and shifted by the defendants as the need arises."

However, Westerville provides a particular definition of "single dwelling unit" as well as "household" and therefore it was error for the trial court to consider the interpretation of "family dwelling" within the normal and accepted use of such term. As stated by the court in *Saunders, supra,* at 265, 20 O.O. 3d at 248, 421 N.E. 2d at 156:

"* * * The definitions of 'family,' 'dwelling unit' and 'single-family dwelling' must be carefully studied without encrusting them with the barnacles of one's own notions and prejudices of what kind of 'family' should live in an 'R-1 suburban residence district.' "

Westerville City Code Section 1105.27 defines "single-family dwelling" as follows:

"* * * [A] building designed exclusively for and occupied exclusively by one household."

Also defined is "household," which means:

"* * * [O]ne or more persons occupying a single dwelling unit, provided that unless all members are related by blood, adoption or marriage no such household shall contain over five persons. Each household shall have separate and independent cooking facilities." Westerville City Code Section 1105.39.

In this case, the evidence is clear that the use of these homes by the residents is for the purpose of occupying a single dwelling unit as a household. As stated by the court in *Beres* v. *Hope Homes, Inc.* (1982), 6 Ohio App. 3d 71, 74, 6 OBR 539, 542, 453 N.E. 2d 1119, 1122:

"As long as the structure in question is maintained, physically, as a private residence and, as long as it is used and occupied by a group of persons living together as a single household unit, it, by existence and use, is not in violation of restrictions running with the land upon which it is located. It follows that as long as the use is devoted to a family household unit, such use is 'private.' It follows from the elements thereof that a household unit is in and of itself private as opposed to a multi-family use or an out and out commercial enterprise. Appellants argue that in spite of the family setting, the operators of this home must provide annual accounting statements, provide reports, and provide supervisors and care paid by the state and federal government. This is all true, but it is collateral to the family housekeeping unit. It does not make that unit non-private any more than the resident, engaged in business, who does his bookkeeping at home."

It is equally clear that evidence does not support the court's finding the homes as used by residents are businesses or institutions. Westerville City Code Section 1105.41 defines an "institution" as:

"* * * [A]n organization providing social, cultural, educational or health services to member agencies, organiza-

tions and individuals or to the general public."

"An "organization" is defined in Westerville City Code Section 1105.58:

"* * * [A]n entity organized on a profit-making or nonprofit-making basis for the promotion of membership interests."

Inasmuch as the residents cannot be considered "members" and the services offered by Humphrey and the Kuehnerts are not available to the general public, the Kuehnerts' and Humphrey's business entities cannot be considered organizations.

There is no definition in the Westerville City Code of "business" which is defined in The American Heritage Dictionary of the English Language (1969) 180, as "[t]he occupation, work, or trade in which a person is engaged. * * * Any commercial establishment, such as a store or factory." Terms not defined are to be given their ordinary and common meaning liberally construing them in favor of the permitted use so as not to extend restrictions in the ordinance to any limitation not clearly prescribed. *Spiccia, supra.*

Any business aspects of the foster family homes in question are conducted by Humphrey and the Kuehnerts off the premises and outside Westerville and are incidental to the use by the residents as a home. There would appear to be no more distinction between the business aspect of these homes than when a for-profit corporation purchases homes in an R-1 district in Westerville for purposes of leasing them to five unrelated people and providing, as part of the lease, housekeeping or other maintenance services. The use of the homes by residents is for the purpose of maintaining a "household" as that term is defined in Westerville City Code 1105.39.

Appellee's argument that to per-mit these homes to operate will permit the operation of any sort of commercial activity is without merit as Westerville City Code Section 1177.03(b) requires that any home occupation be incidental to residential use.

For these reasons, the Kuehnerts' assignments of error one, two and three; Humphrey's assignments of error one, two and four; and the residents' assignment of error one are well-taken and are sustained.

In Humphrey's assignment of error three, the Kuehnerts' assignment of error four and the residents' assignments of error two and three, appellants assert that the application of the Westerville Zoning Code in the manner done by Westerville officials is unconstitutional. Appellants apparently do not contend the Westerville zoning ordinance is unconstitutional on its face. The constitutional arguments were raised by appellants Kuehnerts and Humphrey in their answers and by all appellants in their trial briefs.

In its decision, the court stated:

"* * * This Court does not believe the enforcement of a reasonable zoning ordinance to develop ordinary, planned growth of a city is in violation of any State or Federal Constitutional provision."

In *City of Cleburne* v. *Cleburne Living Center, Inc.* (1985), 473 U.S. 432, the United States Supreme Court struck down a requirement for a special permit for a group home for mentally retarded persons in a residential district. The court stated, at 450:

"The short of it is that requiring the permit in this case appears to us to rest on an irrational prejudice against the mentally retarded, including those who would occupy the Featherston facility and who would live under the closely supervised and highly regulated conditions expressly provided for by state and federal law."

This case differs from *Cleburne* in

that Westerville does not require a permit to operate a foster family home and had, at least at the time of trial, no ordinances pertaining to group homes. However, in the application of its zoning ordinances, Westerville does discriminate against those individuals who are mentally retarded or who are developmentally disabled.

Westerville's zoning and planning officer testified that the four homes were institutions for the reason that the residents were provided with health, education, cultural and social services by the Kuehnerts and Humphrey. However, as discussed earlier in this opinion, the use of the homes does not fall within Westerville's definition of an "institution."

Further, the zoning officer was unable to draw any meaningful distinction between the facts of this case where the Kuehnerts and Humphrey provide a home to five unrelated individuals, four of whom are mentally retarded or developmentally disabled and a hypothetical situation where a for-profit corporation leases a house to five unrelated individuals who have physical handicaps and require similar services. Nor could Westerville provide any basis, rational or otherwise, for allowing a for-profit corporation to lease any number of houses to five or fewer unrelated persons and provide housekeeping and maintenance services similar to those provided by the Kuehnerts and Humphrey. In short, as stated in *Cleburne,* at 449:

"* * * 'If the potential residents of the Featherston Street home were not mentally retarded, but the home was the same in all other respects, its use would be permitted under the city's zoning ordinance.' * * *"

To be valid, a zoning ordinance must substantially relate to the preservation of public health, safety, morals or welfare. *Euclid* v. *Ambler Realty* (1926), 272 U.S. 365. Likewise, zoning ordinances which are otherwise valid must be applied to accomplish the same purpose. *Nectow* v. *Cambridge* (1928), 277 U.S. 183. In this case, there was no evidence that the denial of the use of the Kuehnerts' and Humphrey's homes as foster family homes for mentally retarded or developmentally disabled individuals was in any way related to the preservation of public health, safety or welfare, or that their operation differed in any significant way from other similar permitted uses.

The Kuehnerts' fourth assignment of error, Humphrey's third assignment of error, and the residents' second and third assignments of error are sustained.

In their fifth assignments of error, appellants Kuehnerts and Humphrey contend Westerville is barred on the basis of estoppel. It is appellants' contention that appellants sought the opinion of the appropriate Westerville zoning and planning officials before purchasing or leasing the homes. Appellants assert that specific information was given to Westerville as to the nature of the homes to be operated and that they were assured in telephone conversations that there would be no problem with the proposed use. However, this argument ignores the testimony of Dr. Kuehnert that, as early as 1982, she was aware Westerville had questions concerning the proposed foster family homes in a residential district. Equitable estoppel does not apply against a state or its agencies in the exercise of a governmental function. *Chevalier* v. *Brown* (1985), 17 Ohio St. 3d 61, 17 OBR 64, 477 N.E. 2d 623. The enforcement of a zoning ordinance is a governmental function of a municipal corporation and Westerville is not bound by any statements made by one of its employees as to what is or is not a permitted use. Appellants' fifth assignments of error are overruled.

For the foregoing reasons, appellants Kuehnerts' first, second, third and fourth assignments of error are sustained, and the fifth assignment of error is overruled; appellant Humphrey's first, second, third and fourth assignments of error are sustained, and the fifth assignment of error is overruled; appellants-residents' first, second and third assignments of error are sustained. The judgment of the trial court is reversed.

*Judgment reversed.*

STRAUSBAUGH and BRYANT, JJ., concur.